## RALLS COUNTY COURT v. UNITED STATES.

1. Where judgment has been duly obtained in Missouri against a county upon coupons detached from its bonds, no defence which questions their validity can be pleaded to a *mandamus* commanding the county court to pay the judgment from moneys in the treasury, or raise the means therefor by the levy of a special tax.

2. If not restrained by some valid special limitation upon the exercise of its taxing power, a county, authorized by law to contract an extraordinary debt by the issue of negotiable securities, can levy a tax sufficient to meet the principal and interest, as they respectively mature. *United States* v. *New Orleans* (99 U. S. 582) cited upon this point and approved.

3. A general law confining the annual tax "to defray the expenses of the county" to a fixed per centum is not applicable to such a debt.

4. After the debt was created, laws passed, depriving the county court of the requisite power to levy the tax which it possessed when the bonds were issued, are invalid.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. Henry A. Cunningham* for the plaintiff in error.

*Mr. John H. Overall, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

Section 29 of the act to incorporate the St. Louis and Keokuk Railroad Company, approved Feb. 16, 1857, is as follows: —

"It shall be lawful for the county court of any county in which any part of the route of said railroad may be to subscribe to the stock of said company; and it may invest its funds in the stock of said company, and issue the bonds of said county to raise funds to pay the stock thus subscribed, and to take proper steps to protect the interest and credit of the county. Such county court may appoint an agent to represent the county, vote for it, and receive its dividends."

Under this authority the County Court of Ralls County subscribed $200,000 to the stock of the company, and, during the years 1870 and 1871, issued bonds of the county to pay the subscription. Default having been made in the payment of coupons for interest attached to some of these bonds, Douglass brought suit against the county, in the Circuit Court of the United States for the Eastern District of Missouri, for their recovery, and, on the 16th of October, 1878, obtained judgment for $17,158.43. That judgment was affirmed in *County of Ralls* v. *Douglass, supra,* p. 728.

After the judgment was rendered in the Circuit Court, the present suit was begun by the United States, on his relation, to require the county court, by *mandamus,* to pay the amount due out of moneys in the treasury of the county; or, if that could not be done, to raise the necessary means by the levy of a special tax. In the return to the alternative writ many defences were set up which related to the validity of the coupons on which the judgment had been obtained, as obligations of the county. As to all these defences, it is sufficient to say it was conclusively settled by the judgment which lies at the foundation of the present suit, that the coupons were binding obligations of the county, duly created under the authority of the charter of the railroad company, and, as such, entitled to payment out of any fund that could lawfully be raised for that purpose. It has been in effect so decided by the Supreme Court of Missouri in *State* v. *Rainey* (74 Mo. 229), and the principle on which the decision rests is elementary.

The present suit is in the nature of an execution, and its object is to enforce the payment, in some way provided by law, of the judgment which has been recovered. The only defences that can be considered are those which may be presented in

the proper course of judicial procedure against the collection of valid coupons, executed under the authority of law and reduced to judgment. While the coupons are merged in the judgment, they carried with them into the judgment all the remedies which in law formed a part of their contract obligations, and these remedies may still be enforced in all appropriate ways, notwithstanding the change in the form of the debt.

This brings us to consider what may be done to enforce the judgment. The county court insists that its power of taxation is limited to the levy of an annual tax of one-half of one per cent on the taxable property in the county, and that as this tax has always been levied at the times provided by law, the duty of the court in the premises has been fully performed. The relator, on the contrary, claims that the limit of one-half of one per cent only applies to taxes to defray the general expenses of the county, and that if the fund produced in this way is not sufficient to enable the county to pay his judgment, an additional tax must be levied and collected specifically for that purpose. This presents the real controversy we have to settle.

When the charter of the St. Louis and Keokuk Railroad Company was granted, when the subscription was made to its stock by the county court, and when the bonds to pay the subscription were put out, there were limitations on the powers of the county court for the levy of taxes to defray the expenses of the county which confined the tax for a year to one-half of one per cent or less. The question we have to consider is not whether this power has been reduced below that limit, but whether the limit is applicable to the obligation of the county created under the authority of the particular charter now in question.

It must be considered as settled in this court, that when authority is granted by the legislative branch of the government to a municipality, or a subdivision of a State, to contract an extraordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet, at maturity, the obligation to be incurred, is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention.

The power to tax is necessarily an ingredient of such a power to contract, as, ordinarily, political bodies can only meet their pecuniary obligations through the instrumentality of taxation. This general doctrine has been so many times announced, that it cannot be necessary now to do more than refer to *Loan Association* v. *Topeka* (20 Wall. 655), where the opinion was given by Mr. Justice Miller, and *United States* v. *New Orleans* (98 U. S. 381), in which Mr. Justice Field, speaking for the entire court, went elaborately over the whole subject. In *United States* v. *County of Macon* (99 id. 582), there was a special limitation on the power to tax coupled with the authority to contract, and because the legislature saw fit to say how much of a tax in addition to that otherwise provided might be levied to meet the new and extraordinary obligation which was contemplated, it was held that a prohibition against anything more was necessarily to be inferred.

In the present case there is no such special limitation. The defence rests entirely on the power to tax to "defray the expenses of the county," which it has always been the policy of the State to restrict. The county court was, however, not only authorized to issue bonds, but to "take proper steps to protect the interest and credit of the county." It would seem as though nothing more was needed. As the commercial credit of the county, in respect to its negotiable bonds, could only be protected, under ordinary circumstances, by the prompt payment of both principal and interest, at maturity, and there is nothing to show that payment was to be made in any other way than through taxation, it necessarily follows that power to tax to meet the payment was one of the essential elements of the power to protect the credit. If what the law requires to be done can only be done through taxation, then taxation is authorized to the extent that may be needed, unless it is otherwise expressly declared. The power to tax in such cases is not an implied power, but a duty growing out of the power to contract. The one power is as much express as the other. Here it seems to have been understood by the legislature that the ordinary taxes might not be enough to enable the county to meet the extraordinary obligation that was to be incurred, and so, without placing any restriction on the amount to be

raised, the county court was expressly empowered to do *all* that was necessary to protect the credit of the county. We cannot agree to the position taken by the counsel for the plaintiff in error, that this power was exhausted when the bonds were issued to pay the subscription. The faith of the county pledged by the subscription was kept when the bonds were put out, but only by transferring the credit to be protected from the subscription to the bonds. The subscription was paid by the bonds; but the obligation to pay the bonds, principal and interest, when they matured was legally substituted.

We have been referred to many instances in which statutes were passed authorizing special taxes to pay bonds which had long before been issued under original authority like that contained in the present charter; but this does not, in our opinion, change the case. Such legislation seems to have been procured out of abundant caution; but in none of the numerous cases in the Missouri reports, to which our attention has been directed, is it anywhere said that the requisite tax could not have been levied but for such legislation. In *State* v. *Dallas County Court* (72 Mo. 329), and some other cases before, it was held that such a provision as that contained in the charter of the St. Louis and Keokuk Railroad Company, now under consideration, was repealable; but none of the judges whose decisions have been published intimate even that if there had been no repeal there could not be a tax. It has been many times decided that county courts in Missouri, while acting as the governing bodies of their counties, which are nothing more than political subdivisions of the State, have no implied powers. Authority must be conferred on them by law to act, or they cannot act at all. This is not peculiar to the county officials of Missouri. The same principle applies to all municipal organizations in all the States, and in this respect it matters but little whether the organization exists as a full corporation or a *quasi* corporation. The point is that all such organizations for local government, by whatever name they may be called, have only such powers as the legislatures of their respective States see fit to delegate to them. But all powers that are delegated may be exercised in any proper way and at all proper times.

This makes it unnecessary to consider whether the power of taxation given by the general railroad laws in force when these bonds were made can be invoked in aid of the relator. It is enough that we find sufficient power in the charter of the company itself, without looking elsewhere. We ought, perhaps, to say, however, that the remark in the opinion in *United States* v. *County of Macon* (99 U. S. 582, 591), to the effect that the power of taxation granted by the general railroad laws was confined to subscriptions authorized by them, should be construed as made in a case where a special limitation on the power to tax was contained in the charter which authorized the issue of the bonds then in question, and that it was only necessary to decide that the railroad laws did not enlarge that power. The language there used may be broader than on further consideration we shall be willing to agree to. That case is authority on this point only to the extent it was necessary then to decide.

It follows from this that all laws of the State which have been passed since the bonds in question were issued, purporting to take away from the county courts the power to levy taxes necessary to meet the payments, are invalid, and that, under the well-settled rule of decision in this court, the Circuit Court had authority by *mandamus* to require the county court to do all the law, when the bonds were issued, required it to do to raise the means to pay the judgment, or something substantially equivalent. The fact that money has once been raised by taxation to meet the payment, which has been lost, is no defence to this suit. The claim of the bondholders continues until payment is actually made to them. If the funds are lost after collection, and before they are paid over, the loss falls on the county and not the creditors. The writ as issued was properly in the alternative to pay from the money already raised, or levy a tax to raise more. It will be time enough to consider whether the command of the writ that the court *cause the tax to be collected* is in excess of the requirements of the law, when the justices of the court are called on to show why they have not obeyed the order. The same may be said of the order to draw the warrant on the treasurer. As at present informed, we see no irregularity in anything that has been done.

The judgment of the Circuit Court will be affirmed, and the cause remanded, with leave to the court to make such changes in the order originally entered as may have become necessary by reason of the time that has elapsed since the writ of error was brought ; and it is

*So ordered.*

MR. JUSTICE BLATCHFORD did not sit in this and the case mentioned in the following note.

NOTE. — *Lincoln County Court* v. *United States*, error to the same court, was argued at the same time and by the same counsel as the preceding case.

MR. CHIEF JUSTICE WAITE, on behalf of the court, remarked that the cases differed only in one particular. Here the bonds were not actually delivered until after the statute requiring registration went into effect, though they were in the hands of the agent for delivery before. It is contended that on this account no special tax can be levied for their payment, notwithstanding the judgment that has been recovered upon them. In our opinion this is a defence that cannot be taken advantage of after judgment. As has been said in the Ralls County case, it was conclusively settled by the judgment, which this proceeding is to carry into execution, that the coupons sued on were binding obligations of the county, duly created under the authority of law, and as such are entitled to payment out of any fund that can lawfully be created for that purpose.

*Judgment affirmed and the cause remanded, with the same order as in that case.*