## QUINCY v. JACKSON.

IN ERROR TO THE CIRCUIT COURT OF·THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF ILLINOIS.

Submitted January 9, 1885.—Decided February 2, 1885.

A provision in a city charter, which confers power on the city council to levy and collect taxes annually on real and personal property, to pay debts and meet the general expenses of the city, not exceeding fifty cents on each hundred dollars, relates only to debts and expenses for ordinary municipal purposes; and not to those debts and expenses which can be incurred only by special legislative authority.

An act authorizing a municipal corporation to incur a debt for the purpose of subscribing to the stock of a railroad company, confers authority to levy taxes for the payment of the debt in excess of limit of taxation authorized by law for ordinary municipal purposes. *United States* v. *Macon County*, 99 U. S. 582, distinguished from this case.

Defendant in error petitioned below for mandamus against the mayor and aldermen of the city of Quincy, the plaintiffs in error, to compel the levy of a tax to pay a judgment recovered against the city.

The material allegations of the petition were that the judgment was had upon certain coupons of certain bonds of said city, duly issued by the city in payment 'of its subscription to the capital stock of the Mississippi and Missouri River Air Line Railroad Company. That said bonds recited that they were· issued under an order of the city council, passed August 7, 1868, and an act of the General Assembly of the State of Illinois, approved March 27, 1869, legalizing the act of the said ·city of Quincy. in voting said subscription. That there were no funds in the city treasury of said city to pay said judgment. That the special charter of said city, as amended in 1863 by the act of the legislature of said State, provided that there should be levied on all real and personal. property, within the limits of said city., to pay the debts and meet the general expenses of said city, not exceeding fifty cents on each $100. per annum, on the annual assessed value thereof. That the legislature of said State in 1881 gave said city power to levy on all its taxable property, for all purposes other than for schools and

the interest on its registered bonds, not exceeding in any year the rate of one per cent. of the equalized assessed valuation of such taxable property. That the revenues of said city, from every source, for the year ending March 31, 1885, after paying the necessary running expenses of said city, and the sum of $20,000, and the surplus above the running expenses of said city upon certain other judgments, in pursuance of certain mandamus writs, would not be sufficient to pay relator's judgment, and that the relator was without remedy except by writ of mandamus. The defendants demurred by general demurrer. The demurrer being overruled, the defendants elected to abide by it, and the writ of mandamus issued as prayed for. This writ of error was brought to reverse that judgment.

*Mr. George A. Anderson* for plaintiff in error.—Courts cannot clothe a municipal corporation with powers of taxation. They can only compel it to exercise those already possessed. *United States* v. *Macon County*, 99 U. S. 582, 591. All such powers of taxation are derived from legislative grant, either express or necessarily implied. *Champaign* v. *Harmon*, 98 Ill. 491. And power by implication must arise when the act, out of which it is implied, takes effect. It cannot arise afterwards by reason of failure of existing laws to accomplish their supposed objects. The act of 1863, § 4, clause 3, was the act in force when these bonds were legalized, and was the only authority then existing to levy taxes for payment of debts. It (1) authorized a levy of fifty cents on the hundred dollars and (2) prohibited a levy of a further amount. This law formed a part of the measure of the obligations on one side, and of the rights on the other. *Rees* v. *Watertown*, 19 Wall. 107, 120. This act has not been expressly repealed. If repealed at all, that was effected by the act of 1869 legalizing these bonds. It is familiar law that this court does not favor repeals by implication. *Ex parte Crow Dog*, 109 U. S. 556, 570. The act of 1869 enacted "That the acts of the City Council of the City of Quincy, from June 2, A.D. 1868, to August 28, A.D. 1868, in ordering an election on the proposition to subscribe the sum of one hundred thousand dollars to the capital stock of the Mis-

sissippi & Missouri River Air Line Railroad Company, and the subscription to said stock, and all other acts of said Council in connection therewith, are hereby legalized and confirmed." It may well have been the intention of the legislature that this debt should be paid like all others out of the proceeds of the fifty cent tax. There is no allegation or presumption that this tax was insufficient for the purpose. If it proved so in practice, it would not follow that the legislature intended to repeal the restrictive clause of the act of 1863. It is a much safer position to assume that it regarded the existing laws as sufficient. *Supervisors* v. *United States*, 18 Wall. 71, 81. The Constitution of Illinois, § 23, art. 3, provides that "no private or local law, which may be passed by the general assembly, shall embrace more than one subject, and that shall be expressed in the title." The act of 1869 showed but one subject in the title—the legalization of the bonds. It made no reference to the increase of the taxing power. The object of the act was to place the city in the position it would have been in, had it possessed the power to subscribe, at the time when the subscription was made: it was not its purpose to place the municipality in a different position from what it would have been in by increasing the taxing power. Had the city possessed no taxing powers when the debt was incurred, the case would have been different. This distinguishes it from *United States* v. *New Orleans*, 98 U. S. 381, and *Loan Association* v. *Topeka*, 20 Wall. 655. The current of authority is strong against the doctrine of implied powers of municipal taxation. Cooley on Taxation, 200, 209; *Chestnutwood* v. *Hood*, 68 Ill. 132. A mere grant of authority to contract a debt cannot by implication repeal a pre-existing charter limitation upon the power to raise taxes for payment of debts. *Shackelton* v. *Guttenberg*, 10 Vroom, 660; *Leavenworth* v. *Norton*, 1 Kansas, 432; *Clark* v. *Davenport*, 14 Iowa, 494. The case of *United States* v. *Macon County*, 99 U. S. 582, seems to be identical, in principle, with this case. If so, this court has already decided the question of issue. If not, then the case of *Binkert* v. *Jansen*, 94 Ill. 283, upon the same question, is decisive and conclusive.

*Mr. Carl E. Epler* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

The relator, Jackson, recovered a judgment in the court below against the city of Quincy, Illinois, for the sum of $9,546.24, with costs of suit.

There are no funds in its treasury out of which the judgment can be paid, and its corporate authorities have refused upon demand of the relator to satisfy it, in the only way in which it can be paid, by a levy of taxes for that specific purpose. The judgment in the present action, which was commenced by a petition for mandamus, requires the city council of Quincy to levy and collect a special tax sufficient to discharge the amount thereof, with interest from the date of its rendition, and also the costs of this and the former action. We have only to inquire whether the corporate authorities of the city have the power under the laws of Illinois to levy and collect such a tax.

By an act of the General Assembly of Illinois, amendatory of the special charter of the city, approved February 14, 1863, it is provided that "the city council of said city shall have power to levy and collect, annually, taxes . . . . on all real and personal property within the limits of said city, to pay the debts and meet the general expenses of said city, not exceeding fifty cents on each one hundred dollars per annum on the annual assessed value thereof."

By an act, approved March 27, 1869, it was declared that "the acts of the city council of the city of Quincy, from June 2, 1868, to August 28, 1868, in ordering an election on the proposition to subscribe the sum of $100,000 to the capital stock of the Mississippi and Missouri River Air Line Railroad Company, and the subscription to said stock, and all other acts of said council therewith, are hereby legalized and confirmed." Under the authority conferred by this act negotiable bonds of the city were issued, and the judgment in the first action was for the amount of certain coupons of bonds embraced in that issue. The authority of the city, after the passage of the act of March 27, 1869, to execute bonds in payment of stock subscriptions therein referred to was sustained in *Quincy* v. *Cooke*, 107 U. S. 549.

Subsequently, by an act approved May 30, 1881, it was provided that all cities, villages and incorporated towns in Illinois not then having, by their respective charters, the power to levy and collect as high a rate of taxation as one per cent. annually upon their taxable property, should thereafter have power to assess, levy and collect annually upon the taxable property within their respective limits for all corporate purposes—in addition to all taxes which any such city, town or village was then, or might thereafter be, authorized by law to levy and collect to support and maintain schools, erect school buildings and for all other school purposes, and to pay interest on its registered bonded indebtedness—such an amount as their respective corporate authorities. might prescribe, not exceeding in any year the rate of one per cent. of the assessed valuation of such taxable property, as equalized by the State board of equalization, for the preceding year; the said rate to be in lieu of all other rates and items of taxation then provided and authorized in such charters, for all purposes other than for schools, the erection of school buildings, and all other school purposes, and for paying interest on the registered bonded indebtedness of such city, town, or village. Laws of Ill. 1881, p. 59.

It is conceded by the case before us that the revenue of the city for its fiscal year ending March 31, 1885, to accrue from the taxes it could levy under the act of 1881, after meeting its necessary current expenses and other demands prior to that of the relator Jackson, will be insufficient to pay his judgment, interest and costs.

On behalf of the city it is contended that when these bonds were issued, the act of 1863 prohibited any annual levy of taxes " to pay the debts and meet the general expenses of the city," in excess of fifty cents on each one hundred dollars of the assessed value of its real and personal property. To this it may be replied, as was done in *Quincy* v. *Cooke* in reference to similar language in the original charter of the city, that the act of 1863 related to debts and expenses incurred for ordinary municipal purposes, and not to indebtedness arising from railroad subscriptions, the authority to make which is not implied

from any general grant of municipal power, but must be expressly conferred by statute. When the legislature in 1869 legalized and confirmed what the city council had previously done touching the subscription to the stock of the Mississippi and Missouri River Air Line Railroad Company, and thereby authorized bonds in payment thereof to be issued, it could not have been contemplated that indebtedness thus created would be met by such taxation as was permitted for ordinary municipal purposes. In giving authority to incur obligations for such extraordinary indebtedness, the legislature did not restrict its corporate authorities to the limit of taxation provided for ordinary debts and expenses. In *Loan Association* v. *Topeka*, 20 Wall. 655, 660, the court, after observing that the validity of a contract, which can only be fulfilled by a resort to taxation, depends on the power to levy the tax for that purpose, said: "It is, therefore, to be inferred that, when the legislature of the State authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute, a limitation upon the power of taxation which repels such an inference." So in *United States* v. *New Orleans*, 98 U. S. 381, 393: "When authority to borrow money or incur an obligation, in order to execute a public work, is conferred upon a municipal corporation, the power to levy a tax for its payment, or the discharge of the obligation, accompanies it; and this, too, without any special mention that such power is granted. This arises from the fact that such corporations' seldom possess—so seldom, indeed, as to be exceptional—any means to discharge their pecuniary obligations except by taxation." The same question arose in *Ralls County* v. *United States*, 105 U. S. 733, 735, where it was said: "It must be considered as settled in this court, that when authority is granted by the legislative branch of the government to a municipality, or a subdivision of a State, to contract an extraordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet at maturity the obligations to be incurred is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests

a contrary legislative intention." Again: "If what the law requires to be done can, only be done through taxation; then taxation is authorized to the extent that may be needed, unless it is otherwise expressly declared. The power to tax in such cases is not an implied power, but a duty growing out of the power to contract. The one power is as much express as the other." See also *Parkersburg* v. *Brown*, 106. U. S. 487, 501. The doctrine announced in these cases is sustained by *United States* v. *County of Macon*, 99 U. S. 582, upon which the plaintiff in error relies; for, in that case, the very act, conferring upon the county authority to make a subscription to the stock of a railroad corporation, made special provision for a tax to meet the subscription, and thus negatived the inference that the legislature intended to permit any taxation beyond that allowed by that special act and the general laws of the State.

These decisions cover the present case; for, in the first place, neither the act of 1869, from which the city derived authority to issue negotiable bonds in payment of its subscription, nor any general law of the State, forbids, expressly or by necessary implication, taxation to the extent necessary to meet the obligations thus incurred; and, in the second place, the limitation imposed by the city's charter upon its power of taxation had reference to its ordinary municipal debts and expenses.

In reference to the act of 1881, it is only necessary to say that, if it refers to indebtedness for railroad subscriptions, the limit imposed by it cannot be made to apply to indebtedness created prior to its passage, accompanied, as the latter was, with power in the city, at the time it was created, to impose taxation sufficient to discharge it.

*Judgment affiri.*