STATE, *ex rel*, CLYDE *et al. v.* MAYOR, ETC., OF CITY OF BRISTOL.

(*Knoxville.*   September Term, 1902.)

## 1. MUNICIPAL BONDS. Validity of, Res Adjudicata.

It is now settled in this State that when the supreme court has adjudged an issue of bonds by a municipality to be valid and authorized by the statute under which they were issued, it is too late to question the original validity of the bonds upon any ground whatever; therefore, a municipality has no right to have such questions reviewed as a defense to a petition for a mandamus to compel the levy of a tax to pay judgments rendered on interest coupons from such bonds, in favor of *bona fide* purchasers acquiring title after said bonds have been held valid. (*Post, pp.* 317-324.)

Case cited and approved: Richardson *v.* Marshall Co., 100 Tenn., 440.

Cases distinguished: Brownsville *v.* Loague, 129 U. S., 493; Harshman *v.* Knox County, 122 U. S., 306.

## 2. SAME. Bona Fide Purchasers, Rights of.

Where certain municipal bonds have been held valid by the supreme court of the State and are, thereafter, placed upon the market and pass into the hands of *bona fide* purchasers, the validity of such bonds in the hands of such holders must be determined by the law as judicially construed at the time said bonds were marketed and can not be disturbed by a subsequent different interpretation of the law. (*Post, pp.* 322-324.)

Cases cited: Douglass *v.* Pike Co., 101 U. S., 677; Taylor *v.* Ypsilanti, 105 U. S., 60; New Buffalo Tp. *v.* Cambria Iron Co., 105 U. S., 73.

## 3. TAXATION. Implied powers—In absence of constitutional or statutory inhibition.

It is a sound principle of law that where a valid act of the legislature confers upon a municipality power to issue bonds

State v. Mayor, Etc., of City of Bristol.

it impliedly authorizes the levy of sufficient taxes to meet the debt or satisfy the interest thereon, unless the constitution of the State prohibits such implied power, or the statute authorizing the debt or some general act contain provisions which repel such an implication. (*Post, pp.* 324-326.)

Case cited: Citizens' Saving & Loan Assn. *v.* City of Topeka, 20 Wall., 655; Ralls Co. Ct. *v.* U. S., 105 U. S., 733; City of Quincy *v.* U. S., 113 U. S., 332; United States *v* City of New Orleans, 98 U. S., 393; U. S. *v.* Macon Co., 99 U. S., 582; U. S. *v.* Clark Co., 96 U. S., 211; Lowell *v.* City of Boston, 111 Mass., 460; Scotland Co. Ct. *v.* U. S., 140 U. S., 41; Felton *v.* Hamilton Co. (C. C. A.), 97 Fed., 825.

Case distinguished: Nichol *v.* Morgan, etc., 9 Humph., 52.

**4. CONSTITUTIONAL LAW. Power of the Legislature. Taxation.**

It is a fundamental canon of construction, applicable to State constitutions, that the legislature has all the powers which belong to or reside in the people except when restricted by express provisions, or necessary implication therefrom in the constitution. There is nothing in the constitution of this State which prohibits the legislature from conferring, by implication, authority upon a municipality to levy taxes to pay any particular debt. (*Post, pp.* 326-327.)

Constitution construed: Secs. 28 and 29 of article 2.

**5. TAXATION. Manner of levy, controlled by general law in absence of special provisions.**

It is well-settled law in this State that when an act of the legislature authorizes the levy of a tax, and is silent as to manner by which the levy shall be made, the general law relating to taxation controls. (*Post., pp.* 327-328.)

Cases cited: City of Memphis *v.* Bethel, 3 Tenn. Cases, 206; Town of Bristol *v.* Dixon, 8 Heisk., 864.

**6. SAME. Case in judgment.**

By an act of the general assembly power and authority was conferred upon the municipal authorities of the city of Bristol to issue bonds for certain purposes. These bonds have been declared valid by the supreme court of this State, by which judgments were rendered upon coupons thereon in favor

State v. Mayor, Etc., of City of Bristol.

of relators who by proper petition ask for a mandamus to compel the levy of a tax to pay said judgments. Among other defenses interposed, it was insisted in behalf of the city that it had no authority to levy such tax.

HELD:  That the power to issue bonds carried with it by necessary implication authority to levy a tax to pay said bonds and the interest accruing thereon and that the manner of levying the tax was fixed by the general law.  (*Post, pp.* 317-330.)

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County.   JOHN P. SMITH, Chancellor.

CURTIN & HAYNES and BULLITT & KELLY, for Relators.

A. O. KEEBLER, BURROW BROS. and C. J. ST. JOHN, for Bristol.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a petition for mandamus to compel the city of Bristol to levy and collect a tax to pay certain judgments rendered by this court upon interest coupons from bonds issued to pay a stock subscription by the city to the South Atlantic & Ohio Railroad Company.

The application is resisted upon two grounds: First, because complainants, by their mode of proceeding, and under their pleadings, have reopened the

question of the validity of the bonds from which the coupons were clipped, and it is claimed the bonds are illegal and invalid, and the judgments should never have been rendered; second, that, if the judgments be held good and conclusive, still there is no power in the municipality to levy a tax for the payment of them, or interest on them.

The chancellor gave the relief prayed, and granted a peremptory mandamus, and his decree was, on appeal, affirmed by the court of chancery appeals; and· the city has appealed to this court, and in this court continues the contentions made in the court below.

The court of chancery appeals held, upon the first feature of the case, that the validity of the bonds had already been adjudged by that court and affirmed by the supreme court, and it was bound by the decree of the latter court; and it therefore declined to discuss or pass upon the merits of the original question, or the validity of the bonds.

Upon the second feature of the case, that court held that the city had the power to levy and collect the tax, and gave a full and exhaustive discussion of the facts and law.

It appears that the validity of the bonds from which the coupons were clipped which are the basis of this judgment has been twice declared by this court, once in *Slack* v. *Mayor,* and again in *Mayor, etc.* v. *San Antonio & O. R. Co.*

We proceed to examine the question whether this

court can or should go behind the judgments here-
tofore rendered, and inquire again into the validity
of the bonds and coupons, under the pleadings and
proceedings in the present case.

It is claimed that this may be done, inasmuch as
the relators invoke the law as it existed when the
bonds were issued, and also as it now exists, and this
insistence is based upon the holding of the United
States supreme court in the case of *Brownsville* v.
*Loague,* 129 U. S., 493 (9 Sup. Ct., 327; 32 L. Ed.,
780). In that case it was said: "As already remark-
ed, the circuit court did not hold that the peremp-
tory writ should go to command a levy to pay judg-
ments as debts in that form, but based its order upon
the inability of the respondents, by reason of the
judgments, to assert the abrogation of the act in
question.

Under the legislation between the issue of the bonds,
in 1870, and this application, in March, 1886, author-
ity to levy taxes to pay debts of the character repre-
sented by these judgments, when uncompromised, did
not exist, so that plaintiff was remitted, in the asser-
tion of a right to that remedy, to the time when the
bonds were issued; and as the city had then no power
to tax to pay them, other than that derived from the
act of February 8, 1870, the relator, by his pleadings,
opened up the facts which attended the judgments
for the purpose of relying upon that act as furnishing
the remedy which he sought. In this he, in effect,

asked the court to order the levy of a tax to pay the coupons, and relied on the judgments principally as creating an estoppel upon a denial of the power to do so.

Thus invited to look through the judgments to the alleged contracts on which they were founded, and finding them invalid for want of power, must we nevertheless concede to the judgments themselves such effect by way of estoppel as to entitle the plaintiff, *ex debito justitiae,* to a writ commanding the levy of taxes under a statute which was not in existence when these bonds were issued?" After discussing the case of *Harshman* v. *County Court of Knox Co.,* 122 U. S., 306 (7 Sup. Ct., 1171; 30 L. Ed., 1152), the court further said: "But in the case at bar it appeared from the judgment records, or, if not, from relator's petition, that the bonds were issued under an abrogated statute, and were consequently void, and that the respondents possessed no power to tax to pay them, because that power was given only by the statute which had so ceased to exist. The power invoked is not the power to tax to pay judgments, but the power to tax to pay bonds, considered as distinct and independent; and, therefore, when the relator is obliged to go behind his judgments, as money judgments merely, to obtain the remedy pertaining to the bonds, the court can not decline to take cognizance of the fact that the bonds are utterly void, and that no such remedy exists.

*Res adjudicata* may render straight that which is crooked, and black that which is white; . . . but when application is made to correct judgments by process not contained in themselves, and requiring to be sustained by reference to the alleged cause of action on which they are founded, the aid of the court should not be granted, when, upon the face of the record, it appears, not that mere error supervened in the rendition of such judgments, but that they rest upon no cause of action whatever," citing authorities.

It will be seen from these extracts that the action in the Loague Case was not to compel a levy of a tax to pay judgments, as such, but to pay bonds which have been held by the court to be void. The act upon which the validity of the bonds depended had been abrogated by the constitution before the contract was made, and it had therefore been declared unconstitutional and void.

The relator could not in that case sue upon his judgments, relying upon the act, and he was therefore remitted to and sought the remedy existing when the bonds were issued, which was the act afterward abrogated. Consequently his action was for a levy to pay bonds, and the judgments were relied on simply as an estoppel upon the city to raise the question of the invalidity of the act.

The present suit is one to provide a tax to pay judgments recovered, which are in full force, and which

Cates 1-11

are based upon acts which have not been abrogated, and judgments which have been pronounced after full investigation twice by this court. In other words, this court has passed upon the validity of these bonds twice before the relators acquired vested rights in the bonds, and once since these rights accrued, and has pronounced the bonds valid, and upheld the act which ratified the contract of subscription, cured its defects, if any, and authorized the issuance of the bonds.

As before stated, the question of the validity of these bonds has been passed upon by this court in *Slack* v. *Mayor* and in *Mayor, etc.,* v. *San Antonio & O. R. Co.*

This being so, the decision in *Richardson* v. *Marshall Co.,* 100 Tenn., 351 (45 S. W., 440), is in point, where this court says: "In the face of such a decree in such a litigation, and of such a recognition, and the consequent encouragement to free circulation in the markets of the country, the county will not at this late date be heard to question the original validity of the bonds on any ground whatever, and especially as against the complainant, whose testatrix made her purchase in good faith and for value long after that adjudication, and when nearly all of the interests had been paid on each of the bonds she bought.

It may be conceded, as was decided by the court of chancery appeals, that the statute existing in 1873, when this bond issue was made, did not authorize it;

and yet, because the court of last resort adjudged otherwise, the result would be the same.

Under the rule that every man is presumed to know the law, all intending purchasers were bound, of course, at their peril, to see that the bonds were issued under competent authority. In this, however, they are not required to make an infallible construction of the statute for themselves, but were allowed to rely upon the adjudication of this court.

In other words, they were not required to know the law otherwise than as declared, if declared by the highest tribunal erected for its interpretation. Moreover, should this court interpret these statutes differently, and hold that the bonds were issued without proper legislative authorization, the rights of present *bona fide* holders could not be disturbed thereby, for the validity of the bonds in the hands of such persons must be determined by the law as it was judicially construed to be when the bonds were put upon the market. *Douglass* v. *Pike Co.,* 101 U. S., 677 (25 L. Ed., 968) ; *Taylor* v. *Ypsilanti,* 105 U. S., 60 (26 L. Ed., 1008) ; *New Buffalo Tp.* v. *Cambria Iron Co.,* 105 U. S., 73 (26 L. Ed., 1024).

We think there must be an end of litigation, and that, after the validity of the bonds has been twice adjudged by this court, it is too late to ask to open up that question again; nor does the position taken by the complainant, nor the scope of his pleadings, have the effect to open up the original litigation, but, as

we understand it, complainant insists that both now, and when the bonds were issued, there was authority to issue them, and both now and then there was power under general and special statutes to provide a fund by taxation for their payment, and for the payment of interest upon them.

As before stated, the power to levy and collect a tax for the payment of these bonds and interest has been sustained after being fully considered by the court of chancery appeals, and we now proceed to examine that feature of the case.

We think it is a sound principle of law that, where an act of the legislature confers upon a municipal corporation power to issue bonds, it "impliedly authorizes the levy of sufficient taxes to meet the debt, unless the constitution of the State prohibits such implied power, or the statute authorizing the debt, or some general act, contains some provisions which rebut such an implication." Simonton, Mun. Bonds, 133; *Citizens Savings & Loan Ass'n* v. *City of Topeka,* 20 Wall., 655 (22 L. Ed., 553); *Ralls Co. Ct.,* v. *U. S.,* 105 U. S., 733 (26 L. Ed., 1220); *City of Quincy* v. *U. S.,* 113 U. S., 332 (5 Sup. Ct., 544, 28 L. Ed., 1001); *U. S.* v. *City of New Orleans,* 98 U. S., 393 (25 L. Ed., 225); *U. S.* v. *Macon Co.,* 99 U. S., 582 (25 L. Ed., 331); *U. S.* v. *Clark Co.,* 96 U. S., 211 (24 L. Ed., 628); *Lowell* v. *City of Boston,* 111 Mass., 460 (15 Am. Rep., 39); *Scotland Co. Ct.* v. *U. S.,* 140 U. S., 41 (11 Sup. Ct., 697; 35 L. Ed., 351); 2 Dill. Mun.

State v. Mayor, Etc., of City of Bristol.

Corp., secs. 850, 854; *Felton* v. *Hamilton Co,,* 38 C. C. A., 432 (97 Fed., 825; 9 Hum., 267).

We are cited to the case of *Nichol* v. *Nashville,* 9 Humph., 267, as holding a contrary doctrine. That was a case brought by a taxpayer to enjoin the issuance of bonds on the ground that the act authorizing the bonds also authorized a tax to pay the bonds, and on the alleged ground that there was no constitutional authority to authorize a tax to pay the same. The court simply held that it was not necessary in that case to pass upon the question as to the constitutional right to levy a tax to pay the bonds, that sufficient unto the day was the evil thereof, that the bonds might be paid without levying the tax, and that it would be time enough to pass upon the constitutionality of that part of the act authorizing the tax whenever that question might be presented. The question of implied power to levy a tax to pay bonds was not before the court, and could not have been before the court, for the reason that the act under which it was proposed to issue the bonds expressly authorized a tax to pay the same; and it is well settled that, where the act authorizing the issuance of bonds provides for a tax to pay the same, you can not look to any other authority, either express or implied, for the power to levy such a tax.

If it be held that the power to issue bonds does not imply the power to levy a tax to pay them, it would be an idle mockery in the legislature to authorize the

issuance of bonds for a public improvement, because their only means of payment would be by taxation, and, if that be withheld, the bonds would have no more value than so much blank paper.

Is there in the constitution any provision that overthrows this presumption of power?   It is a familiar and fundamental principle of construction, applicable to State constitutions, that the legislature of the State has all the power of legislation that belongs to or resides in the people, except when restricted by express provisions or necessary implication in the constitution.

It follows that the legislature may by implication grant the municipal corporation the power to levy taxes to pay municipal debts, unless there is some provision in the constitution requiring such grant of power to be in express terms.

There is nothing in the constitution or the general law of the State, or in the act authorizing these bonds, which rebuts this implication.

If there be any such provision, the burden is on the defendants to show it.   The only provisions which they rely upon to rebut this implication are sections 28 and 29 of article 2 of the constitution. Section 28 provides, that "all property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be  equal and uniform throughout the State."

Section 29 provides that "the general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law."

Now, the respondent contends that, before a tax can be validly imposed, it is necessary that the manner of imposing the same shall be prescribed by law, and that it is also necessary that the law should prescribe the manner in which the value of the property to be taxed shall be ascertained, and that therefore, there can be no implied power to levy a tax to pay bonds, because, where one relies upon such implication, the manner of imposing the tax and the manner of ascertaining the value of the property to be taxed can not be said to have been prescribed by law. In other words, the contention is that every act which authorizes a tax must likewise go further, and prescribe the manner in which it shall be imposed, and the manner in which the value of the property to be taxed shall be ascertained.

But we think that the general law prescribes the manner in which municipal authorities shall impose taxes, and the manner in which the value of the property to be taxed shall be ascertained; that is, it prescribes what authorities of a city shall have a right to impose taxes, how they shall make their levies, how the assessments shall be made, how the taxes shall be extended on the tax books, how they shall be collected,

and what proceedings shall be taken in case of delinquencies, and that, whenever an act authorizes the 'levy of a tax, the general law steps in and prescribes the manner in which it shall be imposed, and the manner of ascertaining the value of the property to be taxed, etc., *City of Memphis* v. *Bethel,* 3 Tenn. Cas., 206; *Town of Bristol* v. *Dixon,* 8 Heisk., 864.

It may be conceded that if a special act gives the power to tax, and couples with it the manner of imposing such tax, or prescribes any prerequisite, such as a vote of the people, different from the general law upon the subject, the special provision of the special act must be followed in order to make a legal tax; still, if no provisions are made, the general laws relating to taxation govern and control.

The permission given by the legislature to municipalities to levy and collect taxes may be enlarged or restricted according to the legislative will, by special act, so that it is not contrary to the provisions of the constitution.

This permission or grant need not necessarily be comprised in one statute alone, nor be set out in express terms. We have held that Acts 1887, ch. 88, conferred upon the city of Bristol the power to issue the bonds, and by necessary implication it conferred also the power to levy a tax to pay them and the interest upon them.

The mode and manner of making the assessment, levy, and collection of taxes, not being provided speci-

ally in the acts, is regulated by the laws in force for
the assessment and collection generally, as contained
in the biennial assessment and revenue acts passed
by the general assembly.

Certainly, a special power of taxation could have
been conferred in the same act which authorized the
debts or obligations.   And it may be said that such is
the wisest and best policy, but it is not absolutely
necessary when there are general provisions in other
statutes which cover the entire ground.

It is also insisted that the power of the city of
Bristol to levy this tax is conferred by Acts 1855-56,
pp. 138-143, which is the charter of the city; also by
Acts 1897, ch. 214, p. 499, in which the charter and
amendments are incorporated into one act; also by
chapter 50 of Acts 1870-71.   This latter act is almost
a literal copy of section 29, art. 2, of the constitution.
It was evidently, among other things, its purpose to
carry that provision of the constitution into effect,
and to confer upon municipal corporations the taxing
power, and at the same time to lay down rules and pre-
scribe the method for holding elections under the re-
quirements of the constitution in regard to the lend-
ing of credit by corporations for internal improve-
ment purposes.   In holding that the act of 1887 was
good and valid, this court necessarily and as a fact
held that the act of 1870-71 had been complied with
and the power to tax followed as an inevitable conclu-
sion.

It appears that the city of Bristol is now levying a tax of only $1.25 on the $100 of assessed value of its property. The assessed valuation of property taxable is $1,650,000. Of the levy now being made .0065 is for the purpose of paying interest on outstanding bonds and other indebtedness; the latter amounting to not over $300. The levy for interest is not for any special bonds, but for interest on all of the city's bonded debt. It is also levying a tax of twelve cents on the $100 for sinking-fund purposes, and it is insisted that relators should share in these funds.

But we think these matters are not embraced within the pleadings and scope of the suit, nor properly before the court, as the city can levy a tax sufficient for relators' present purposes, as set out in the bill, without exceeding, or even filling up, its limit of $2 on the hundred.

It follows that the decree of the court of chancery appeals is affirmed.