COMMISSIONERS OF PITT COUNTY v. MacDONALD, McKOY & CO. AND W. S. GLENN.

(Filed 29 May, 1908.)

1. **Counties—Bond Issues, Validity of—Taxation—Levy—Constitutional Limitations.**

County bonds issued by a popular vote of the county for training-school purposes, under legislative authority, without provision to exceed the constitutional limitation of levy for principal, interest or for a sinking fund, are valid and a good tender, under a contract with the purchasers calling for the delivery of valid bonds, though they are not for necessary purposes.

2. **Same.**

When bonds are issued by a county by popular vote, under legislative authority, which does not further provide for a levy to exceed the constitutional limitation for principal, interest or for a sinking fund, the commissioners are without authority to levy a tax to exceed the restriction.    State Constitution, Art. VII, sec. 7.    (*Charlotte v. Shepard,* 122 N. C., 602, where the bonds were issued by a town, cited and distinguished.)

BROWN, J., concurring *arguendo.*    CONNOR, J., dissenting; HOKE, J., concurring in dissenting opinion.

ACTION upon case agreed, heard by *W. R. Allen, J.,* at May Term, 1908, of PITT.

*T. J. Jarvis* for plaintiffs.
*F. G. James* for defendants.

CLARK, C. J.  The bonds ($50,000) were issued by Pitt County, though not for necessary purposes, but by virtue of a popular election and under special authority of the General Assembly (Laws 1907, ch. 493). They are valid bonds of the county of Pitt, and this has been expressly held as to these identical bonds. *Cox v. Commissioners,* 146 N. C., 584.

The bonds being valid, it follows that taxes can be levied, up to the constitutional limitation, to pay the interest as it falls due and the principal at maturity. *Ralls v. United States,* 105 U. S., 733. The purchasers of the bonds, not content with the validity of the bonds, now urge that there is no power to levy taxes for the payment of interest if in excess of the constitutional limit, nor to raise a sinking fund to take up the principal thirty years hence. This is true. There can be no levy of taxes in excess of the constitutional limitation, even for necessary purposes, without special permission of the General Assembly, nor for other than necessary purposes except by a vote of the people besides. The act of the General Assembly in this case (Laws 1907, ch. 493) contains no authority to exceed the constitutional limitation for interest or principal, nor to provide a sinking fund. Consequently there has been no vote of the people on that proposition and no such authority has been given. *Board of Education v. Commissioners,* 107 N. C., 110.

It does not appear in this record that it will be necessary to levy taxes in excess of the constitutional limitation to meet the interest on these bonds. Being valid bonds, the commissioners can be compelled by *mandamus,* if necessary, to levy up to that limit to meet the interest. *Ralls v. United States, supra.* It does not appear that the defendants contracted for

COMMISSIONERS *v.* MACDONALD.

bonds for which there should be authority conferred by legislative enactment and popular vote to levy taxes in excess of the constitutional limit to pay interest and to raise a sinking fund to pay the principal.    Presumably they did not, as they must have had the statute before them and have seen that the authority to do these things was not given.    When these bonds fall due, thirty years hence, Pitt County will doubtless have sufficient wealth and population to meet them with the greatest ease, or sufficient credit to renew them if desired.

Upon the case agreed it appears that the contract of the defendants calls for the delivery of valid bonds of Pitt County. These are valid bonds, for which taxes to pay interest can be levied up to the limit prescribed.    They are, therefore, a good tender under the contract.

*Charlotte v. Shepard,* 122 N. C., 602, is not in point. There being no constitutional limitation upon taxation by a town, when an act of the General Assembly authorizes an issue of bonds upon a vote of the people, and such vote is favorable, there is authority to levy taxes without limitation (unless prescribed in the act) to meet principal and interest. *Young v. Henderson,* 76 N. C., 420.    Not so as to county bonds not issued for necessary purposes, as to which authority to issue carries authority to levy taxes for payment of interest, but not beyond the limitation unless so provided in the act and voted by the people.    *Smathers v. Commissioners,* 125 N. C., 480; *Ralls v. United States,* 105 U. S., 733.    Even for the most necessary county purposes taxes cannot be levied beyond the limit except by legislative authority, and for other than necessary expenses no tax can "be levied or collected" unless authorized "by a vote of the majority of the qualified voters."    Const., Art. VII, sec. 7.    The bonds being valid and a good tender, under the contract as set out in the record, the judgment is

Modified and Affirmed.

BROWN, J., concurring: I concur fully in the opinion rendered in this case by the Chief Justice for the Court. I am of opinion that the bonds constitute a valid indebtedness of the county of Pitt, and that the interest and principal may be paid out of the general revenues of the county. I should deeply regret to retard the establishment of the Eastern Training School, and see no reason why our decision should retard it, but I am compelled to follow what to me appears the plain and unequivocal language of our State Constitution. Section 7, Article VII, is in these words: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, *nor shall any tax be levied or collected* by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

The language of section 6, Article V, is equally explicit, and expressly forbids the levying of county taxes for special purposes, unless by "special approval of the General Assembly." It is admitted that the debt is contracted for a special purpose, and consequently any tax specially levied to pay it must have the special approval of the General Assembly; otherwise, the plain language of the Constitution goes for naught.

There being no legislation authorizing such special tax levy, the approval of the General Assembly is wanting, and it follows that the purchaser must rely on the general revenues of the county for his payment.

It is but just to presume that the reason the usual provision for a special tax to pay interest and to provide for a sinking fund was omitted in this act was because the county authorities doubtless thought the general revenues of the county amply sufficient to meet their obligations.

So far as the purchaser is concerned, he knew when he bid for the bonds that no such special tax levy is provided for in the act, and if he was at all familiar with bond legislation in

this State for many years past he must have known that in legislation of this character the acts invariably provide, not only for contracting the debt, but for levying a special tax for interest and sinking fund purposes. It is possible there are voters who voted for this bill who would not have voted for it with a special-tax provision in it.

Again, section 7, Article VII, is as mandatory as language can make it. It not only expressly forbids the contracting of the debt, but also prohibits the levying of the tax without the approval of the qualified voters. "Nor shall any tax be levied or collected," etc., says the Constitution. There is a double prohibition—one against contracting the debt and the other against levying the tax. The cases cited from the Supreme Court of the United States have no application to this case, so far as I can see. That Court was not confronted in those cases with express constitutional restrictions, such as are contained in our organic law.

I am not responsible for the decision in *Charlotte v. Shepard,* 122 N. C., 602, but I think the distinction pointed out between that case and this is well taken, inasmuch as section 6 of Article V has no application to cities and towns.

CONNOR, J., dissenting: I concur in the conclusion that the bonds in controversy are valid, as held by us in *Cox v. Commissioners, supra.* I dissent from so much of the opinion as holds that the Commissioners of Pitt County have no power to levy a tax beyond the limit prescribed by Article V, section 6, of the Constitution. I do not think that section 6 of Article V has any bearing upon or relation to the power to levy taxes to pay the interest and provide a sinking fund for the payment of these bonds. They rest upon the direct vote of the people, pursuant to Article VII, section 7, of the Constitution. This section confers upon or, speaking more accurately, reserves to the counties, cities and towns the power to contract debts and levy taxes to pay them, with the ap-

148—9

proval of the majority of the qualified voters therein.   The language is restrictive upon the Legislature and the governing body of the municipality, but gives to the people the power to contract the debt and, by necessary implication, to provide for its payment.   If the debt be for necessary expenses, the municipality acts promptly through its governing agents; but if, as in this case, the people wish to promote their welfare for an extraordinary purpose, they must confer the authority to contract the debt upon the commissioners, not by a mere plurality, but by a majority of the qualified voters. Thus read, we have a clear conception of the true purpose and meaning of the provision.   It is entirely independent of legislative approval.   Its manifest purpose was to permit the people, by a majority of the qualified voters, to contract debts for such purposes as they might deem conducive to their corporate welfare.   It will be noted that the words "except for necessary expenses" exclude the idea that section 6 of Article V has any bearing upon the power conferred by this section (7).   Section 6, Article V, has no relation whatever to contracting debts or levying taxes to pay the interest or principal on debts contracted by a vote of the people.   The only effect of the legislative act is to prescribe the machinery for submitting the proposition, with the terms, etc.   Bonds issued pursuant to section 7, Article VII, do not derive their validity from any action of the Legislature, but from the vote of the people.   The Legislature cannot, under section 6, Article V, authorize the contraction of a debt, but, in the express language thereof, may authorize the commissioners to levy a special tax for a special purpose, having no relation whatever to the contraction of debts or providing for their payment. This Court has uniformly held that, for "the necessary expenses," a county, city or town may, without the approval of the Legislature or a vote of the people, contract a debt.   This power, of course, carries with it as a necessary incident the power to levy a tax to pay the interest and provide for the

payment of the principal. *Fawcett v. Mt. Airy,* 134 N. C.,
125. We have held in a number of cases that counties and
towns may, without submitting the question to a vote of the
people, issue bonds for necessary expenses. If the purpose is
not "a necessary expense," the debt can be contracted only
with the approval of a majority of the qualified voters. When
given, it carries as incidental the power to levy a tax to pro-
vide for its payment. The expression "nor shall any tax be
levied," etc., was made a part of section 7, because without it
the remaining portion of that section would have permitted a
not improbable construction that, while municipalities could
not contract a debt, they could undertake some enterprise, not
a necessary expense, by levying a present tax sufficient to pay
the same. But when the power to contract a debt has been
submitted to and approved by a popular vote, the uniform
current of authority is to the effect, as stated, that when the
power to contract a debt is properly conferred, the power to
pay the debt in the ordinary way is necessarily implied. This
is the construction put upon the Constitution in *Charlotte v.
Shepard,* 122 N. C., 602. It is interesting to note the lan-
guage of the Court in that case, as reported in 120 N. C., 411.
The identical line of reasoning now adopted was used by the
Justice writing at that time. Referring to the election held
in Charlotte, in which the people approved the issue, he says:
"It was only an election concerning the *issue of the bonds,*
and not concerning the consent of the voters that the board of
aldermen might levy a tax to pay the bonds. That question
was not submitted to a vote nor was it voted upon." There
was no express power conferred upon the city authorities to
levy a tax to pay the interest or provide for the principal
when due. It was stated in the case agreed that the charter
fixed the rate of taxation which could be levied by the city,
and that "the taxes authorized to be levied would not pay the
ordinary and current expenses of the city and also the interest
and principal on said bonded indebtedness." The case of

*Ralls v. United States,* 105 U. S., 733, was cited in the opinion, and it was said: "In *that* case there was no special limitation. In the case before us there is such special limitation." Thus we see that the Court reached the conclusion in that case upon the ground that a vote to *issue the bonds* did not carry with it the power to levy a tax beyond the limits fixed by the charter. In the same case, upon a petition to rehear, the decision was reversed. The opinion cites with approval the *Ralls case, supra. Furches, J.,* says: "When such a corporation has thus acquired the right to create the debt and issue the bonds, this power carries with it the power to levy the taxes necessary to pay said bonds and the accruing interest thereon. *Ralls case,* 105 U. S., 733; *United States v. New Orleans,* 98 U. S., 381. It is admitted that these cases are direct authority for this position, if there is no public law to the contrary, but it is suggested that Article VII, section 7, of the Constitution provides otherwise, and therefore the doctrine declared in these cases does not apply and that it is necessary that the power to tax should be *expressly* granted in the legislative act. We do not think Article VII, section 7, *nor any other provision in the Constitution,* contains any such requirement as this. * * * We cannot believe that it was ever intended by this section of the Constitution to authorize the creation of a debt without authorizing the power to pay the same. And a municipal corporation has no means of payment but by taxation." These are wise words, expressing wholesome truth. The people of this Commonwealth or any political division thereof never voted to issue and sell a bond, use the proceeds for the purposes for which it was issued, with no intention of providing for its payment. *Faircloth, C. J.,* concurred, saying: "The question there is presented whether the board, having acquired authority by complying with the provisions of the act to contract the debt and issue bonds for paying the same, and having made such contracts, has an implied authority to levy

taxes to meet this obligation. I think they have. This is the only question." This decision, expressly reversing and rejecting the reasoning in the first decision, is by a unanimous Court, the Justice writing the first opinion concurring. I confess my inability to see any distinction between the cases. Article VII, section 7, applies to "counties, cities, towns and other municipal corporations," making no distinction between them. It will be observed that in *Shepard's case* the charter of the city of Charlotte limited the rate of taxation. The decision is not put upon the suggestion that the act authorizing the issue of the bonds with the approval of the people amended the charter, but upon the ground that by necessary implication the power to levy the tax was conferred. If it be conceded that section 6, Article V, applies, and that double the State tax cannot be exceeded without the special approval of the Legislature, why does not the power to levy the necessary tax to pay the interest and provide for the principal pass as incident to the power to contract the debt, thus finding by necessary implication the approval of the Legislature? The principle upon which *Shepard's case* was rested (122 N. C., 606) is uniformly announced in every other case. Beginning with *Loan Association v. Topeka,* 20 Wall., 660, it is said "that when the Legislature confers power upon a county or city to contract a debt, it intends to authorize to levy such taxes as are necessary to pay the debt, unless there is in the act itself or in some general statute a limitation upon the power of taxation which repels such an inference." This case is followed by *Ralls' case, supra,* citing cases from several States. In *Parsons v. Charleston* (Hughes, 282), *Waite, C. J.,* said: "When, therefore, a power to contract a debt is conferred, it must be held that a corresponding power of providing for its payment is also conferred. The latter is implied in the grant of the former, and such implication cannot be overcome except by express words excluding it." In *Ralls County Court v. United States,* 105 U. S., 733, *Waite, C. J.,*

says: "The power to tax is necessarily an ingredient of such power to contract, as ordinarily political bodies can only meet their pecuniary obligations through the instrumentality of taxation. This general doctrine has been so many times announced that it cannot be necessary now to do more than refer to it," naming a number of cases. In *Quincey v. Jackson,* 113 U. S., 332, *Harlan, J.,* says: "In giving authority to incur obligations for such extraordinary indebtedness the Legislature did not restrict its corporate authorities to the limit of taxation provided for ordinary debts and expenses." In *Scotland County Court v. Hill,* 140 U. S., 41 (47), *Harlan, J.,* says: "The power to tax in such cases is not an implied power, but a duty growing out of the power to contract. The one power is as much expressed as the other." *State v. Mayer, etc.,* 109 Tenn., 315. Without further pursuing the decided cases in which the principle is uniformly enforced, I must confess, with all possible deference to my learned brethren, that I regard the conclusion to which they have arrived as a serious blow to the credit of the municipal corporations, including counties, of the State. I fear that, relying upon the decision in *Charlotte v. Shepard, supra,* many bonds have been issued under acts similar to the one before us. Their value must be seriously impaired by the decision now made, which, I think, practically overrules *Shepard's case.* It is not surprising that at each term of the Court we are called upon to pass upon the validity of municipal bonds. The credit of the State and its municipalities was never so high as at this time. The uncertainty of the validity of our bonds is the only obstruction to their sale at even higher figures, thus lowering the rate of interest. Next to character and capacity, the most valuable asset which a people, both individually and corporately, can have is the integrity of their obligations. The two first elements of credit our people possess; it is the duty of the Legislature and the courts to guarantee the last. It would be useless and frequently impracti-

COMMISSIONERS *v.* MACDONALD.

cable to provide in the act authorizing the vote of the people a specific rate of taxation. It is wisely left to the local legislature, the commissioners, to levy a reasonable rate, in the light of the value of the property in the town or county. It is conceded that this is true when a town or city is authorized to contract a debt, but it is insisted that the same power cannot safely be given the county commissioners. To my mind, if any distinction is made which the Constitution does not make, the county legislative body is the safer one to entrust with the power. It was the evident purpose of our people, in their Constitution of 1868, as amended in 1875, to develop capacity for local self-government, conferring upon counties and townships municipal powers, duties and responsibilities. We have recognized the right of the Legislature to divide counties into school districts, fence districts, road districts, etc., and to confer upon them municipal powers and duties. It develops the capacity for government, encourages citizens to take a direct, personal interest in the local government, educates them, cultivates a sense of personal responsibility, etc. They contract debts, after careful consideration, for the promotion of education, good roads, public buildings, etc. I cannot but regret to see any unnecessary restrictions thrown around them. The report of the Tax Commission shows that the county of Pitt levies for current expenses 23⅔ cents on the $100 valuation for current expenses. The people have made most remarkable and gratifying progress in public schools and all other things, showing progress and prosperity. They have with remarkable unanimity, both in town and county, provided for the erection of buildings within which an Eastern Training School is to be conducted by the State. I know, of course, that the majority of the Court regret that their judgment in respect to the law seriously impedes this great work and retards it for possibly another year. I cannot but think that these people fully understood when they voted these bonds that they were conferring upon the commis-

sioners the power to levy a small tax to pay the interest and provide a sinking fund for their redemption. I cannot concur in the judgment, which compels the defendants to accept bonds which doubtless they contracted to purchase and the plaintiffs contracted to sell, relying upon the decisions of this Court that the commissioners had the power to provide for their payment. To compel them to accept discredited bonds, utterly worthless, would savor of bad faith. In the light of the decision I think that the judgment of his Honor should be reversed. I am quite sure that the citizens of Pitt County would not compel the acceptance of a bond which they had no power to pay. The State of North Carolina cannot afford to educate her children upon the money of strangers without affording them an assurance that it will be repaid, with interest.