## No. 9174.

THE STATE EX REL. A. MARCHAND ET AL. VS. THE CITY OF NEW ORLEANS

Relator's judgment being founded on a contract entered into in 1873, at a time when the city possessed a power of taxation for general expenses exclusive of interest and schools. of twelve and one-half mills, it is the settled doctrine of the Supreme Court of the United States and of this Court, that, so far as necessary to the satisfaction of the contract, the same power of taxation continues to exist, irrespective of subsequent legislative or constitutional restrictions.

This Court has heretofore held that the writ of mandamus remained a proper and subsisting remedy to compel the city authorities to perform the duties imposed upon them by Act No. 5 af 1870.  30 Ann. 129.

In the same case it was held that the said Act imposed upon the administration the absolute duty to provide in their annual budgets for the payment of registered judgments so far as not interfering with the necessary alimony of the city.   The duty to provide implies and includes the duty to exercise the power of taxation conferred by law, to the extent necessary to furnish the means for such provision.

The city having, for the purposes of this contract a power of taxation of two and one-half mills. not applicable to alimony, and not exercised, it is her duty to exercise it to the extent necessary to provide for payment of this judgment, unless she otherwise provides for such payment.

Under the law in existence at the date of this contract, the city's liability was not restrained to the revenues of the year in which the debt was contracted.

Section 2786 Revised Statutes has no application to this case. If it had, its effect is foreclosed by the judgment.

A PPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

*Blanc* and *Butler*, for the Relators and Appellees.

1. A judgment, final and conclusive against the City of New Orleans, and not expressly limited to any particular fund in the judgment itself, is not to be so restricted. 98 U. S. 381, 395 ; 4 Wall. 435 ; 9 Wall. 409 ; 99 U. S. 591.

2. Such a judgment, when registered according to Act No. 5, Acts of 1870, Ex. Sess., must be provided for in the budgets of the City of New Orleans until fully paid.

3. A judgment creditor, with such a judgment duly registered, is entitled to a mandamus to compel such budget provision, and that such provision be made expressly for him. as he is not concerned if other judgment creditors sleep on their rights, or do not proceed to enforce them 28 Pa. St. 207 ; Dillon, Mun. Corp. p. 850, note ; 17 Iowa, 1 ; 5 Wall. 705.

4. A judgment based on obligations of the City of New Orleans arising in 1873, are not affected by the constitutional amendment of 1874, construed to contain an inhibition against incurring debt. 29 Ann. 863.

5. Nor is such a judgment in any manner affected by the constitutional limitation of ten mills for City expenses. for by the Acts of 1872, Act No. 73, Sec. 15, in force when the obligation arose, the City limit of taxation was twelve and one-half mills, and to that extent the taxing power of the City of New Orleans entered into and constituted a contract right with the obligee, protected by the Constitutions of this State and of the United States. State ex rel. De Leon vs. City, 34 Ann. 1182; State ex rel Carrierre, 36 Ann. No. 9005, Sup. Ct. La.

6. There is, then, one-quarter of one per cent. of taxing power, unused by the City, and which it is bound to exert in payment of this judgment of relator's. That unused rate, would realize over $250,000 per annum, nearly *nine* times the amount of the judgment.

7. There never existed anterior to 1877, if since, any act or rule limiting or restricting a debt due by the City, to the revenue of any year. Revenues appropriated to debts may be a particular fund for them, but does not operate to prevent payment from future revenue or other sources. Nelson vs. Parish of St. Martin, 111 U. S. p. 716.

8. Besides the revenue of 1873 is, by the Constitution of 1879, payable in debts of any year *except judgments*. See end of miscellaneous ordinances for the relief of tax payers—Const. 1879.

9. Were it ever true that a judgment on a debt of 1873 must only be paid from the revenue of that year, or never paid, the Constitution now intervenes with a change, which makes it unconstitutional for such judgment to be referred to that revenue.

10. Section 2786, R. S., does not in any manner restrict a debt of a particular year, to the revenue of that year, and certainly not the obligation on which relator's judgment is based—for this :

(a) It does not expressly or by implication authorize any such restriction.

(b) It provides for the mode in which municipalities generally shall incur debt, and is a general rule inapplicable to the City of New Orleans, which is governed by a special law

on the subject and by a very different mode of incurring and paying debts. See City Charters and Act No. 5. of 1870, Ex. Sess.

(c) It refers exclusively to cases of debts voluntarily incurred or *created* by a municipality, as upon its own motion, and such is not the description of the obligation on which relator's judgment was rendered. 111 U. S. 716.

11. Relator's judgment was given for the obligation of the City of New Orleans to pay for the removal and care of indigent cases of small-pox patients. The City was without volition to incur this obligation; it arose without any motion or discretion of the City, and was the result of an express requirement of law, requiring the City to pay for such cases. See the quarantine laws and others. Acts 1870, p. 55, Sec. 6; Act 1872, No. 60, Sec. 3; City Charter, Acts 1877, p. 30; 27 Ann. 522.

12. Though the City Council had determined not to pay for such cases, the City would have been bound, for the Legislature left it no discretion, and no action whatever was required of it, to allow of the removal and care of such cases and to pay therefor. The necessity of protection against contagion, as from cholera, small-pox, etc., was not left to the City to decide, but provided for by the Legislature, and the expense thereof imposed on the City.

13. In this instance the City recognized its duty, and did engage to carry out the requirements of the law.

14. Such cases of expense arising without necessity of any action by the City and directed, without discretion left, by the State, has always been and is clearly to be distinguished from cases of debts which are not necessarily required by law, and which are *created* by a municipality on its own motion and within its own discretion. 98 U. S. 397; 24 How. 364; 34 Pa. St. 496; 40 Id. 348; 3 Id. 400; 4 Ohio St. 472; Dillon's Mun. Corporations, § 741, § 61; 27 Ann. 522; 95 U. S. 654.

15. From the above it must follow that the Legislature having required the City to pay, to incur the obligation on which relator's judgment rests, it was and has always been the duty of the City to provide fully and completely for its payment. It has not been paid; it cannot be paid by reference to any back and worn-out revenue. The back and exhausted revenue no longer goes or can go to any judgment or particular debt. Nothing short of express prior legislative words *excluding* the City from paying, can support the position that the City is not authorized to set apart and appropriate money by taxation and from revenue, in its budgets, to pay said judgment. The mere direction to pay, requires sufficient and real provision to be made, and such an "implication cannot be "overcome except by *express* words *excluding* it." 98 U. S. p. 393; 25 Wis. 122; 111 Mass. 460; 73 Pa. 477; 20 Wall. 660; 98 U. S. 390; Dillon, Mun. Corp. §§ 851, 854.

*C. F. Buck*, City Attorney, *contra.*

1. (a) Act No. 5, of Acts of 1870, E. S., does not impose an absolute duty on the City Council to provide payment of judgments. The provisions of that act must be construed with reference to other laws creating the municipal corporation of New Orleans, defining its powers and duties of its agents or representatives.

(b) It must be subordinated to the prime and essential requirements of the law on which the existence of the corporation depends. Out of the current revenues that which is necessary for the maintenance of the government must first be set apart. The power or authority to set apart money out of such revenues to pay registered judgments is purely discretionary, and to be exercised after the necessities of municipal administration are satisfied.

2. No *special* taxes, over existing limitation can be ordered, except to pay contract debts protected from impairment by the Constitution of the United States.

3. When payment of a judgment against a municipal corporation is sought to be enforced, in an exceptional manner, the consideration of the judgment, or original contract, must be inquired to ascertain whether, under it, the party is entitled to the relief prayed.

4. Judgments against the City of New Orleans, founded on ordinary floating debt or ordinances of appropriation, do not confer on the owners thereof any greater rights than they had under the original evidence of indebtedness.

These rights, under existing laws, are to be paid out of revenues of the year in which the ordinances were passed.

Constitutional amendment of 1874, Act 30, 1877, City Charter of 1882. Taxpayers Association vs. City, 33 Ann. 567.

Independence of express legislation, a municipal corporation is a body of limited powers. And where the rate of taxation is fixed and limited, such limitation is a prohibition against the creation of any indebtedness beyond revenues derived from the exercise of the taxing power and other prescribed sources of income.

The power of the Council is *administrative*, only. It can disburse the revenue but create no debt beyond it.

---

The opinion of the Court was delivered by

FENNER, J. In 1872, the Legislature of the State passed Act No. 60 of that year, by which it established the Luzenberg Hospital in this city as the exclusive hospital for small-pox and further provided that " all indigent cases of small-pox, or other diseases reported contagious, in want of or making application for hospital aid or care, shall be sent to the hospital designated in this act, at the expense of the city of New Orleans, as usual and at the usual *per diem*."

Acting under this direction, the city entered into a contract with Dr. Anfoux then in charge of said hospital by which he was to receive and treat such patients at a stipulated compensation of thirty-five dollars per case. During the year 1873 he received and treated a large number of cases, for which the amount due by the city under the contract was $19,670.

In 1878 suit was brought and judgment recovered against the city on the foregoing cause of action and for the amount above stated, with interest and costs.

The judgment thus rendered was duly registered July 5th, 1878, pursuant to the provisions of Act No. 5, of 1870. This registration has produced no results; the judgment has not been paid; and the evidence makes it manifest that under the city's construction of its duties under the Act No. 5, and under its modes of execution thereof, many years must elapse before any payment will be made upon this judgment.

The reason why this debt remains, and promises to remain, unpaid, is that the city construes her power and duty of taxation to be governed and limited by the provision of the Constitution of 1879 to a tax of ten mills on the dollar, in so far as provision for such judgments is

concerned, and that the requirements for her alimony leave, out of the receipts from this tax, nothing or little to be appropriated to the satisfaction of judgments.

To this the creditor answers that he is a creditor by contract; that, at the date of his contract, the city possessed, by law, a power of taxation for " current city expenses exclusive of interest and schools " only limited to one and one-quarter *per cent;* that *quoad* this contract obligation and so far as necessary for its satisfaction, this power of taxation still exists unaffected by subsequent legislative or constitutional provisions; that, under the Act No. 5 of 1870, it is the duty of the city authorities to provide for the payment of his registered judgment by setting apart in the annual budget a sum for that purpose, and that, in order to execute this duty, the correlative duty is imposed of exercising the power of taxation vested in the city by law to the extent necessary to raise the means to make such provision.

In pursuance of these views, the present suit was instituted for a mandamus directing the city authorities to execute and perform the duties imposed by the Act No. 5 of 1870; and, in accordance therewith, to set apart in the next annual budget sufficient money to pay such judgment; and further directing them to provide in said budget, by taxation for current city expenses, in excess of the amount allowed by law for the alimony of the city but not in excess of one and one-quarter *per cent.*, the means of revenue necessary to pay relator's said judgment, and so to do, in all succeeding annual budgets, until the same be paid.

From a judgment making the mandamus peremptory, the city has appealed.

We lay down the following propositions of fact and law viz:

1st.  The judgment was founded on a contract entered into in 1872.

2d.  At the date of the contract, the city possessed a power of taxation for · general expenses " exclusive of interest and schools," of twelve and one-half mills *per annum.*  See Act No. 73 of 1872, Sec. 15.

3d.  Under the consistent jurisprudence of the Supreme Court of the United States and of this Court, the power of taxation existing at the date of the contract is read into the contract and continues to exist, so far as necessary for the enforcement of the obligations of the contract, irrespective of any subsequent legislation or constitutional enactments restricting the power of taxation, State *ex rel.* Moore vs. City, 32 Ann.; State *ex rel.* Dillon vs. City, 34 Ann. 477; State *ex rel.* Carriere vs. City, 36 Ann.; Von Hoffman vs. Quincy, 4 Wall. 535; Wolff vs. New Orleans, 103 U. S. 358; Nelson vs. St. Martin, 111 U. S. 720.

4th. This Court has long since held that the prohibitions against the issuance of the writ of mandamus against officers of the city of New Orleans contained in Act No. 5 of 1870, apply only to the cases therein specially designated and that, for the performance of the duties imposed by that act itself, the writ of mandamus was a proper remedy. State ex rel. Carondelet vs. New Orleans, 30 Ann. 129.

5th. In the same case it was held that, under Act No. 5 of 1870, it is the "plain duty" of the city authorities " to provide for the payment of registered judgments in the only mode in which judgment creditors of the city are permitted to collect their judgments. This requires the action of the Mayor and Administrators, in their aggregate capacity as a municipal government; the adoption of the annual budget; the levy of the necessary taxes; · and a setting apart of a sufficient amount to pay this and other registered judgments.     *     * The duty of the city to make this provision is not discretionary as to time or manner. The law imperatively requires that it shall be in the next annual budget, and by setting apart, appropriating a sufficient amount out of the annual revenues." State ex rel. Carondelet vs. New Orleans, 30 Ann. 129.

This duty, we have held, however, is subordinate to the higher and absolute duty of first providing, out of the revenues applicable to that purpose, for the necessary alimony or support of the city. State ex rel. Moore vs. City; Saloy vs. City.

6th. In the DeLeon case we held that the duty to appropriate and set apart money in the annual budget for particular purposes, "involved necessarily the duty to levy such tax (within the power of taxation possessed, at the time, by the corporation) as will render possible the performance of the duty." State ex rel. DeLeon vs. City, 34 Ann., p. 477.

7th. The relator herein claims and is entitled to no special tax. He is simply entitled to payment out of the revenues arising from the collection of taxes provided for the general expenses of the city. He simply asks that the power of taxation conferred by law for that purpose shall be exercised to the extent necessary to furnish the means out of which his judgment may be paid.

So far as relator's contract and judgment are concerned, we have already shown that the city possesses a power of taxation for general purposes of twelve and one-half mills. She has, heretofore, exercised, and proposes hereafter to exercise this power only to the extent of *ten mills* on the dollar, and, as the revenues arising from this tax are appli-

cable to, and required for, the necessary alimony of the city, they leave, as we have said, little or nothing, which can be appropriated for the payment of registered judgments.

From the foregoing statement, it appears that, to the extent necessary for the provision for payment of plaintiff's judgment, the city possesses a residuary power of taxation of two and one half mills, not exercised and which she refuses to exercise, the revenues from which would, under no circumstances, be applicable to the city's alimony, or, indeed, to any other purpose than that of satisfying relator's judgment and others standing in like case with it. It would be, indeed, an anomaly, if the city could escape from or postpone her clear duty, to provide for the satisfaction of such judgments, by simply abstaining from the exercise of lawful powers of taxation to an extent necessary to provide the means of paying them. Such an anomaly could never be sanctioned by any court of justice, since it would render the payment of debts no longer obligatory upon municipal corporations, but dependent purely upon their will and caprice.

From the foregoing considerations it would conclusively appear that relators are entitled to the relief which they seek, unless there is something in the nature of their debt, or in the law existing at the date of their contract, which debars it. Legislation subsequent to the contract has, and can have, no effect upon the rights and obligations arising from the contract.

The learned counsel for the city propounds two special defenses based upon the nature of plaintiff's debt and the law in existence at the date of the contract.

1st. He contends that, from the very nature and constitution of municipal corporations, they are incapable of creating or contracting a debt for current expenses, in excess of the revenues arising from taxation, within the limitations imposed by law, for the year in which the debt was created; and that such debt, whether created by contract or not, can only demand satisfaction out of the revenues of that year.

If such had been the law of Louisiana, as applicable to the city of New Orleans, in 1873, it is passing strange that, in 1874, it should have been deemed necessary to pass a constitutional amendment establishing the very principles which, it is contended, already existed and were inherent in the very nature of the corporation.

We have rigidly enforced the constitutional amendment of 1874, as applicable to debts created after its passage. Taxpayers vs. New Orleans, 33 Ann. 568.

But when we are asked to recognize the principles established by that amendment as existing independent of it and prior to its passage, and as applicable to debts contracted prior thereto, we must pause.

The proposition is supported by no authority and by no well founded reason. It is contradicted by the entire financial administration of the city prior to 1874, by the uniform current of judicial interpretation which has constantly rendered and enforced judgments upon such obligations without restriction to the revenues of particular years, and by the terms and spirit of the Act No. 5 of 1870 itself.

For what would be the sense of requiring the city authorities to provide in coming budgets for registered judgments, without distinction, if such judgments could only seek satisfaction out of the revenues of some antecedent year in which the debts were contracted? We dismiss the proposition as utterly untenable.

Nor is there anything in the nature of the debt which prevents this contract from being protected from impairment under the Constitution of the United States. The protection afforded by that instrument is not restricted to bonds or any particular forms of contract. It covers all contracts. Every lawful contract of a municipal corporation is entitled to satisfaction by the exercise of the power of taxation possessed by the corporation at its date, to the extent necessary, and to invoke the continued and repeated exercise of that power until the debt is satisfied.

Such is the clear and unequivocal doctrine announced by the Supreme Court of the United States uniformly and specially in the very recent case of Nelson vs. St. Martin, 111 U. S. 716.

2. The city next contends that relator's claim must fall by reason of failure to comply with the requirements of Section 2786, Revised Statutes, which declares: "That the constituted authorities of incorporated towns and cities of the State, shall not, hereafter, have power to contract any debt or pecuniary liability without fully providing, in the ordinance creating the debt, the means of paying the principal and interest of the debt or contract."

We express no opinion on the mooted point as to whether this law applies to the City of New Orleans. It is sufficient to say that the defence must fail in this case for several reasons:

1. The defence should have been interposed to the original judgment and comes now too late, and this alone is certainly conclusive.

2. The Section 2726 is a mere legislative act, binding on corporations but not binding on the legislature itself, which might repeal,

modify, or restrain its application at pleasure. In this case the legislature did not merely authorize, but imperatively required the city to pay the expenses of indigent small-pox patients. The city could not escape from its obligation to pay by failing to provide for it.

3. The debt on which this judgment is founded is for current municipal expenses; and we have held that debts for such expenses do not fall under the restrictions imposed by the statute referred to. Laycock vs. City, 35 Ann. 479.

This disposes of this point.

We are not called upon to consider the rights of other judgment creditors whose judgments rank that of relators in order of registry. The record does not advise us whether their judgments are based on contracts or whether they rest upon causes of action arising prior to the constitutional amendment of 1874. It may be that none of them can compete with relators in the relief sought. But, at all events, the unexhausted power of taxation is ample to satisfy all; and if they are entitled to like rights with relators and have neglected to exercise them, there is no reason why relators should suffer.

Let it be well understood that the duty to levy an extra tax is not obligatory under this decree. The city may satisfy the debt out of its revenues under the existing rate of taxation. But the insufficiency of such revenues will be no excuse for not satisfying the judgment and, if necessary, and *only* if necessary, must provision be made by a tax for general expenses above ten mills and within twelve and one-half mills.

Judgment affirmed.

Rehearing refused.

Bermudez, C. J., and Poché, J., take no part in this opinion and decree.

POCHÉ, J. Having been prevented by illness from making a thorough examination into the many issues presented in this case, and having no desire to retard the announcement of conclusions adopted by the majority of the Court, I prefer to take no part in the decree herein rendered.