UNITED STATES ex rel. KILPATRICK et al. v CAPDEVIELLE et al.

(Circuit Court of Appeals, Fifth Circuit   November 25, 1902.)

No. 1,157.

1. FEDERAL COURTS—ENFORCING JUDGMENTS AGAINST CITY—EFFECT OF STATE STATUTE.

Act La. No. 5, Ex. Sess. 1870, which prohibits the granting of a mandamus for the collection of judgments against the city of New Orleans, is not binding upon the federal courts, which derive their power to enforce their judgments in such cases by mandamus from section 14 of the federal judiciary act of 1789, now Rev. St. § 716 [U. S. Comp. St. 1901, p. 580].

2. CITIES—CREATION OF INDEBTEDNESS—NEW ORLEANS DRAINAGE WARRANTS.

Under Act La. No. 16 of 1876, authorizing the city of New Orleans to purchase the drainage plant and franchises of the Mississippi Gulf Ship Company, and to pay for the same in drainage warrants, payable exclusively out of drainage assessments, warrants so issued did not create a new indebtedness, since they covered not only the price of the property, but a settlement of an existing indebtedness of the city to the previous owners upon assessments theretofore made against it as the owner of streets and other public property, which had been reduced to judgments; and holders of the warrants are entitled to enforce collection of such assessments for their benefit.

3. SAME—AUTHORITY TO LEVY SPECIAL TAX.

The authority given by the Louisiana drainage acts of 1858, 1859, 1861, and 1871 to make special assessments against the city of New Orleans, as owner of the streets and public grounds, for the cost of drainage work, necessarily carried with it, in the absence of express provision otherwise, authority for the levy of a special tax by the city to discharge the indebtedness created, in addition to the regular levy authorized for general municipal purposes.

McCormick, Circuit Judge, dissenting.

---

¶ 1. Enforcement of judgment against municipality by mandamus, see note to Holt Co. v. National Life Ins. Co. of Montpelier, Vt., 25 C. C. A. 475.

¶ 3. See Municipal Corporations, vol. 36, Cent. Dig. §§ 2040, 2043.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

By Act No. 165 of 1858, amended by Act No. 191 of 1859 and Act No. 57 of 1861, certain drainage districts were established covering certain territory within the city of New Orleans. The cost of the work was imposed on all the lands within the several districts. Assessments were made against private owners, and against the city as quasi owner of the streets and other public places, by the boards of the several districts prior to 1871. In that year the legislature, by Act No. 30, transferred the powers and duties of the boards to the Mississippi Gulf Ship Canal Company. Subsequent to this transfer the administration of the city made further assessments under authority of Act No. 30. All of these assessments were reduced to judgment between the years 1861 and 1872. They constituted the fund out of which the Canal Company was to be paid for the drainage work required to be done under said Act No. 30. By Act No. 16 of 1876, approved February 24th, the city of New Orleans was authorized to purchase the drainage plant and franchises of the canal company, and to discharge the price in drainage warrants, payable exclusively out of drainage assessments. Pursuant to this authority, the city, on the 7th of June, 1876, made the purchase, and issued $300,000 of warrants in payment of the price. The Jackson warrants involved in this suit are part of that issue. Jackson intervened in the suit of Warner v. City of New Orleans, No. 12,350 on the docket of the circuit court, which was brought on part of the same class of warrants by the complainant in his own interest and that of others similarly situated, and recovered a decree against the city for the amount of these warrants, payable out of drainage assessments, as follows:

"United States Circuit Court, Eastern District of Louisiana.

"John G. Warner et als. v. City of New Orleans.    No. 12,350.

"This cause came on to be further heard at the present term upon the intervention of James Jackson, the proofs and master's reports as heretofore confirmed by the court, and was argued by counsel for the respective parties. Thereupon, in consideration thereof, it was ordered, adjudged, and decreed as follows: First. That the court finds in accordance with the reports of the master, and decrees that the defendant is chargeable with and owes drainage taxes assessed against it upon the area of the streets, squares, and public places within the several drainage districts of the city of New Orleans under the provisions of the acts of the legislature of the state of Louisiana, as set forth in the original and amended bill of complaint, to the amount of one million eight hundred and fifty-three thousand and three hundred and thirty-six and $52/100$ dollars ($1,850,336.52); that defendant is indebted in said sum to the drainage fund established by the decree in this cause of December 5, 1898, as a trust fund for the benefit of the complainant and all of the holders of drainage warrants, including the intervener, James Jackson, similar to those of complainant, who have established their claims before the master; that said fund so due by the defendant is more than sufficient in amount to pay all the drainage warrants issued by defendant under authority of the act of the legislature of the state of Louisiana No. 16, of February 24, 1876, in principal and interest; and that the intervener, James Jackson, is entitled to an absolute judgment against the defendant for the sum of forty-five thousand dollars, with 8 per cent. per annum interest thereon from June 6, 1876, until paid, as found by the master in his several reports which have been heretofore confirmed. Second. It is therefore ordered, adjudged, and decreed that the said James Jackson do have and recover absolute judgment against the defendant, the city of New Orleans, for the sum of forty-five thousand dollars, with eight per cent. per annum interest thereon from June 6, 1876, until paid, with all costs of suit, and that he have execution therefor against the defendant as in cases of suits at common law in actions of assumpsit, according to the rules in equity established by the supreme court. It is further ordered that A. G. Brice, Esq., master, be allowed a fee of one thousand dollars, to be taxed against the

defendant as part of the costs in the cause. Thus done and signed in open court at New Orleans, La., on this the fourteenth day of June, A. D. 1901.

"[Signed]                            Charles Parlange, U. S. Judge."

Execution issued on the decree June 26, 1901, and was returned nulla bona July 29, 1901. On the 1st of February, 1902, the petition for a mandamus in this case for the levy of a tax to pay said decree was filed in the circuit court. The answer filed by the mayor and councilmen of the city denied all the allegations of the petition as to the rendition of the decree, the issuance of an execution and the return of the marshal thereon, but substantially contains only two defenses: (1) That Act No. 5, Ex. Sess. 1870, affords the only remedy to which relators can resort for the collection of their judgment, and that said act prohibits the granting of a mandamus for its collection. This act provides that judgments shall be registered with the comptroller of the city, and paid in the order of registry. (2) That at the present time the city has no unexercised power of taxation, the present rate authorized by law being 22 mills on the dollar, which has been levied.

The evidence in the case, as set out in the bill of exceptions taken to the charge of the court below, is undisputed and without conflict. It appears from the stipulation signed by the attorney of the city that the following drainage taxes against the city have been assessed: Assessment in the First drainage district, dated September 12, 1861, and reduced to judgment March 11, 1863, $223,110.60; in the Second district, assessment dated March 11, 1861, and reduced to judgment November 11, 1868, $199,997.17; in the Third district, assessment dated March 30, 1872, $207,441.46; in the Fourth district, assessment dated November 8, 1872, and reduced to judgment March 13, 1873, $69,956.77. These assessments, as appears from the findings of the master, and by the court in the decree in favor of Jackson, amounted, in principal and statutory interest, to $1,850,336.52, at the date of the decree. It appears that when the drainage plan or scheme was put in operation by the Acts of 1858, 1859, and 1861, which authorized the assessments to be made, Act No. 164 of 1856, which limited the rate of taxation to 1½ per cent. for all purposes, was in force, and continued in force up to 1870; that this rate of 1½ per cent. was levied each year up to 1870, except for the years 1862 and 1863, in which years only 1 per cent. was assessed, leaving an unused taxing power of one-half of 1 per cent. in each year. It appears that from 1870 to 1872 the full limit of the taxing power was used, but by Act No. 73 of 1872, § 15, p. 127, the city was authorized to levy—"First, a city debt tax, based on a detailed estimate of the sinking fund and interest falling due; second, a tax for current city expenses, including police, and exclusive of interest and schools. This tax shall in no year exceed one and one-fourth per centum." It appears from said comptroller's report that under said Act No. 73 for the year 1873 the rate allowed for city expenses and police was 12.50 mills; the tax levied for expenses was 7.51 mills; the tax levied for police was 3.20 mills, and the unused taxing power for said year was equal to 1.79 of a mill on the dollar. The supreme court of the state, however, seems to have found that the unused taxing power for this year was 2½ mills. See State v. City of New Orleans, 37 La. Ann. p. 13. This was based on 10 mills levy for city expenses and police. In 1874 the tax for city expenses was 6.08 mills; the tax for city police was 4.45 mills. This left the city an unused taxing power of 1¼ mills for the year 1874. In 1875 the tax for city expenses was 5.1 mills; the tax for police was 4.95. This left the city an unused taxing power of nearly 2½ mills for the year 1875.

These facts were not disputed in the court below, but the court refused to instruct the jury to find for the relators, and directed a verdict in favor of respondents, to which relators duly excepted. The case comes here upon the whole record on the following assignments of error:

"(1) At the conclusion of the trial and before the jury retired, the relators submitted the following request: 'Now, at the conclusion of the trial in this cause, and before the jury had retired, come the relators, by their attorney, and request the court, upon all the evidence adduced in the cause, to direct the jury to find a verdict in their favor,'—which charge the court refused

to give. Thereupon the respondents submitted the following request: 'Now, at the conclusion of the trial in this cause, and before the jury had retired, come respondents, by their attorney, and request the court, upon all the evidence adduced in the cause, to direct the jury to find a verdict in their favor,'—which charge the court gave as requested. Relators aver that the court erred in refusing to give the charge requested by them as aforesaid, and in giving the charge prayed for by the respondents; the ruling of the court being contrary to the undisputed evidence and the law applicable thereto. (2) The court erred in holding that the relators were not entitled to the levy of a tax to pay the amount of their judgment. (3) It appearing from the undisputed evidence that the judgment of relators was based on an extraordinary indebtedness of the city of New Orleans, to wit, assessments against the city of New Orleans, as quasi owner of the streets, squares, and other public places, for the cost of a local improvement, which the city could have incurred only by authority of the Special Laws of the State of Louisiana of 1858, 1859, and 1861 and 1871, under which said assessments were made, the court erred in holding that relators were not entitled to the levy of a special tax to pay said judgment. (4) The court erred in ruling that the indebtedness on which relators' judgment was based was created by the agreement of June 7, 1876, by which the city of New Orleans acquired the property and franchises of the Mississippi & Mexican Gulf Ship Canal Company for $300,000 in drainage warrants, payable out of drainage assessments, and that such indebtedness is subject to the limitation on the rate of taxation contained in Act No. 30 of the legislature of Louisiana approved March 6, 1876; and that the indebtedness so created was not an extraordinary indebtedness, for which the law allows a special tax by necessary implication. (5) It appearing from the undisputed evidence that the city of New Orleans was indebted to the drainage fund for drainage assessments made in 1861 and 1872 on the streets, squares, and other public places, in amount more than sufficient to pay the sum due relators on their judgment, and that the city still possesses unused taxing power of 5 mills for each of the years 1862 and 1863, and unused taxing power of 2½ mills for each of the years 1872, 1873, 1874, and 1875, the court erred in not directing the jury to find for relators, and in refusing to order the exercise of this reserved taxing power to an extent sufficient to pay relators' judgment. (6) The court erred in holding that the limitations on the taxing power of the city of New Orleans apply to its indebtedness for drainage assessments on its streets, squares, and other public places for the local improvements authorized by the Acts of 1858, 1859, and 1861, and by Act No. 30 of 1871. The court erred in holding that Act No. 5, Ex. Sess. 1870, operates as a bar to relators' right to resort to a mandamus to enforce the payment of their judgment."

R. De Gray, John D. Rouse, and Wm. Grant, for plaintiffs in error.

Frank B. Thomas, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After stating the facts as above, PARDEE, Circuit Judge, delivered the opinion of the court.

In directing a verdict for the defendants in error, the presiding judge assigned no specific reasons. The defense insisted upon in the court below, and now in this court, is based upon two propositions: First, that Act No. 5 of the Extra Session of the Louisiana Legislature in 1870 affords the only remedy to which the plaintiffs in error can resort for the enforcement of their decree, and said act prohibits the granting of a mandamus for the collection of judgments against the city of New Orleans; and, second, that since June 7, 1876, when it is claimed the debt now merged in the Jackson

decree was contracted, up to the present time, the city has had no unexercised power of taxation, and that the present rate authorized by law is twenty-two (22) mills on the dollar, all of which has been levied. Act No. 5 of the legislature of Louisiana of 1870 ought not to be permitted to defeat the relator's right to a mandamus, because, as held by the supreme court of the state in Marchand v. City of New Orleans, 37 La. Ann. 13, said act is not always controlling in the state courts, while the jurisdiction of the federal courts to issue writs of mandamus to enforce judgments is not derived from the state law, but ex necessitate, and from the fourteenth section of the judiciary act of 1789, now section 716 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 580]. See Riggs v. Johnson Co., 6 Wall. 166, 18 L. Ed. 768; Bath Co. v. Amy, 13 Wall. 244, 20 L. Ed. 539; Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633, 30 L. Ed. 743. Also, see Railroad Co. v. Hart, 114 U. S. 654, 661, et seq., 5 Sup. Ct. 1127, 29 L. Ed. 226. We do not understand that the defendants in error claim that since the drainage assessments were levied the authorized maximum limit of taxation on the part of the city of New Orleans has always been reached. In fact, the proof shows that in the years 1873, 1874, and 1875 the full limit was not reached. The contention that the debt of the city of New Orleans which the relator is now seeking to enforce originated in 1876 on the issuance of the drainage warrants to Van Norden, and not prior thereto, when the assessments for drainage were levied, is in direct conflict with the terms of the decree rendered in favor of Jackson, and also, with the opinion of the supreme court of the United States in City of New Orleans v. Warner, 175 U. S. 120, 144, 20 Sup. Ct. 44, 54, 44 L. Ed. 96, from which we quote as follows:

"The act of 1876 did not so much authorize an increase of the city's debt as a diversion of the warrants to the purchase of the drainage plant, instead of a payment to the transferee for work done. We think the amendment should receive a construction commensurate with the object intended to be accomplished, namely, the drainage of the city, whether such drainage were carried out by Van Norden or by the city itself, and that it should not be limited to such warrants as were to be issued for the work. The debt for the assessments had already been incurred and put in judgment, and the amendment was intended to recognize the existence of such debt, and to provide that the warrants issued in payment of the same should not be treated as within the scope of the amendment. Beyond this, however, these warrants were to be issued not only in payment of the drainage plant, but in settlement of Van Norden's claims against the city for damages connected with the failure of the city to carry out its contract with the canal company and Van Norden, which, in view of the fact that the drainage plant had been purchased by him for $50,000, may be assumed to have been the greater part of the consideration. Indeed, it is open to serious consideration whether the reservation of drainage warrants in the constitutional amendment of 1874 was necessary, in view of the fact that the assessments had already been reduced to judgments against the city and the property owners, and that the further issue of drainage warrants was rather in the nature of the payment of a debt already incurred than the creation of a new obligation."

From this statement of the case it clearly appears that the answer of the defendants presents no sufficient reason why the mandamus prayed for should not issue, and that the same might well have been restricted to a general denial to put the relators on proof.

The plaintiffs in error have specifically assigned as errors many possible rulings of the court below necessitating a judgment as directed, but we think the third assignment, to wit:

"It appearing from the undisputed evidence that the judgment of relators was based on an extraordinary indebtedness of the city of New Orleans, to wit, assessments against the city of New Orleans, as quasi owner of the streets, squares, and other public places, for the cost of a local improvement, which the city could have incurred only by authority of the Special Laws of the State of Louisiana of 1858, 1859, and 1861, and 1871, under which said assessments were made, the court erred in holding that relators were not entitled to the levy of a special tax to pay said judgment,"

—Covers the case, and is well taken. The assessments for drainage against the city of New Orleans provided for by the drainage laws of 1858, 1859, and 1861 authorized an extraordinary indebtedness of the city, and, as neither those laws, nor any subsequent prior to 1876, when Jackson's warrants were issued, made any express provision for the payment of the indebtedness so authorized, it is properly and necessarily to be implied that the legislature intended to authorize the city of New Orleans, as occasion might require, to levy a special tax to discharge the indebtedness authorized. This view of the case is fully supported by City of Quincy v. U. S., 113 U. S. 332, 5 Sup. Ct. 544, 28 L. Ed. 1001, and adjudged cases there cited. We quote:

"On behalf of the city it is contended that when these bonds were issued the act of 1863 prohibited any annual levy of taxes 'to pay the debts and meet the general expenses of the city' in excess of fifty cents on each one hundred dollars of the assessed value of its real and personal property. To this it may be replied, as was done in City of Quincy v. Cooke, 107 U. S. 549, 2 Sup. Ct. 614, 27 L. Ed. 549, in reference to similar language in the orginal charter of the city, that the act of 1863 related to debts and expenses incurred for ordinary municipal purposes, and not to indebtedness arising from railroad subscriptions, the authority to make which is not implied from any general grant of municipal power, but must be expressly conferred by statute. When the legislature in 1869 legalized and confirmed what the city council had previously done touching the subscription to the stock of the Mississippi and Missouri River Air Line Railroad Company, and thereby authorized bonds in payment thereof to be issued, it could not have been contemplated that indebtedness thus created would be met by such taxation as was permitted for ordinary municipal purposes. In giving authority to incur obligations for such extraordinary indebtedness, the legislature did not restrict its corporate authorities to the limit of taxation provided for ordinary debts and expenses. In Association v. Topeka, 20 Wall. 655, 660, 22 L. Ed. 455, the court, after observing that the validity of a contract, which can only be fulfilled by a resort to taxation, depends on the power to levy the tax for that purpose, said: 'It is, therefore, to be inferred that, when the legislature of the state authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute, a limitation upon the power of taxation, which repels such an inference.' So, in U. S. v. City of New Orleans, 98 U. S. 381, 393, 25 L. Ed. 225: 'When authority to borrow money or incur an obligation in order to execute a public work is conferred upon a municipal corporation, the power to levy a tax for its payment or the discharge of the obligation accompanies it; and this, too, without any special mention that such power is granted. This arises from the fact that such corporations seldom possess —so seldom, indeed, as to be exceptional—any means to discharge their pecuniary obligations except by taxation.' The same question arose in Ralls Co. Ct. v. U. S., 105 U. S. 733, 735, 26 L. Ed. 1220, where it was said: 'It must be considered as settled in this court that, when authority is granted

by the legislative branch of the government to a municipality, or a subdivision of a state, to contract an extraordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet at maturity the obligations to be incurred is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention.' Again: 'If what the law requires to be done can only be done through taxation, then taxation is authorized to the extent that may be needed, unless it is otherwise expressly declared. The power to tax in such cases is not an implied power, but a duty growing out of the power to contract. The one power is as much express as the other.' See, also, Parkersburg v. Brown, 106 U. S. 487, 501, 27 L. Ed. 238."

The undisputed evidence shows that the city of New Orleans is indebted to the drainage fund for drainage assessments made in 1861 and subsequently on the streets, squares, and other public places in an amount sufficient to pay the relator's judgment, and that the city of New Orleans still possesses unused taxing power of 5 mills for each of the years 1862 and 1863, and 1.79 of a mill for the year 1873, 1¼ mills for the year 1874, and 2½ mills for the year 1879, all of which could be used for the payment of relators' judgment. These facts are made the basis of the fifth assignment of error, and appeal strongly in favor of relief to the relators; but we do not think it necessary to rule thereon, as maintaining the third assignment of error will give the relators plenary relief.

The judgment of the circuit court is reversed, and the cause remanded, with instructions to grant a new trial.

McCORMICK, Circuit Judge, dissents.