McCALEB, Justice
(dissenting).
The gist of the majority opinion, as I read it, is that Act 756 of 1954, amending Section 2 of Article 16 of the Constitution, does not impair the obligation of the contract between the Board of Commissioners of the Orleans Levee District and its bondholders only because the constitutional amendment has not decreased the taxing power of the Levee District from 5% to 3% mills.
It is my opinion that the construction thus given not only disregards the reason and spirit of the law and the cause of its adoption but leads to the unseemly consequence that the people, by the passage of the amendment, actually vouchsafed to the Levee District 3 mills for the future construction and maintenance of its levees during 1955 and 2^ mills to service and liquidate its antecedent outstanding bonds. That the Legislature and the people never intended anything of this sort is clearly shown by the fact that this constitutional amendment was indispensably related to and connected with Act 751 of 1954. which authorized the Orleans Parish School Board to levy an additional 1%-mill tax, provided Act 756 was approved by the electors, and also by Section 3 of Act 756, which sets forth the words to be printed on the official ballot to be used at the election thus:
“For the proposed amendment to Section 2 of Article XVI of the Constitution of 1921, decreasing the tax millage of the Board of Commissioners of the Orleans Levee District.” (Emphasis mine.)
These words were followed by a similar provision for those persons who desired to vote against the decrease in millage.
Accordingly, it would seem plain that it was never the design of either the Legislature or the people that the Levee Board's taxing powers would be enhanced or even unaffected by the constitutional amendment. • *590 But the majority say that, since there is no ambiguity in the language employed in the amendment, there is therefore no room for interpretation and that the.provision must be construed as written, that is, that it gives to the Levee Board power to levy taxes not to exceed 3% mills for levee maintenance and construction during 1955 and also provides that the amendment shall not affect or impair the right of taxation to service and liquidate the antecedent bonds issued by the Board.
I cannot agree that the language used in the constitutional amendment supports this narrow interpretation. In the first place, in discerning what was intended by the provision that the annual tax levies of the Levee Districts throughout the State shall be for the purpose of constructing and maintaining levees “and for all other purposes incidental thereto,” consideration must be given to the fact that Section 2 of Article 16 of the Constitution provides the only general taxing power which Levee Boards are authorized to exercise. Bonds which were issued prior to the adoption of the 1921 Constitution were of necessity required to be liquidated out of the 5-mill levy applicable at that time to all Boards, as there was no other taxing source from which such funds could be obtained. Indeed, the language of the Constitution authorizing Levee Districts to assess a 5-mill tax is identical with that contained in the amendment reducing the tax millage of the Orleans Levee District to a maximum of 3Yz mills. No one has heretofore contended that the language of the Constitution stating that the tax millage is to be used “for the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto” was so prospective in its purpose that the taxes collected from the levy were not attributable to the payment of the antecedent debts of the various Boards and particularly, in the case at bar, to the bonds issued in 1909, long prior to the adoption of Section 2 of Article 16 of the Constitution. It appears to me that payment of outstanding bonded indebtedness is a purpose incidental to the construction and maintenance of levees, as the very taxes which were funded into bonds (under authority of Section 3 of Article 16 of the Constitution) were dedicated for that purpose.
Nor can the proviso of the constitutional amendment be fairly construed as an absolute grant to the Orleans Levee District to levy additional taxes not to exceed 5% mills. On the contrary, that proviso is simply a recognition by the people of the obligation of the antecedent contracts of the Board and assures the Board’s creditors that, notwithstanding the reduction of the taxing power of the Orleans Levee District to 3% mills, it would nevertheless be required to levy a tax not to exceed 5% mills in the event the 3%-mill tax and other revenues at any time proved insufficient to service and liquidate its pri- *592 or indebtedness. The evidence in this case, which the majority does not discuss, plainly exhibits, as found by the district judge, that the taxes which the Board will receive, based on 3% mills for 1955, plus its other revenues, will not only be ample to pay all of the fixed charges and other outstanding contractual liability but will actually leave a balance of $2,676,463 on hand after such payment.
I am also of the opinion that the reduction in the power of taxation, which the people sought to effect by constitutional amendment, did not, in fact, impair the obligation of a contract as the President of the Levee Board, who intervened as a bondholder, contends. It is, of course, well recognized by the authorities cited in the majority opinion that the value of a contract cannot be diminished by subsequent legislation and that its impairment is not one of degree, but any encroachment upon the obligation must be avoided. However, the constitutional objections to legislation reducing the taxing power of a political subdivision obtain only in cases where the public body has been deprived of sufficient revenues or resources with which to pay ■its obligations according to their terms. For a comprehensive discussion of this matter see annotation 156 A.L.R. pages 1264-1280, also cases of State ex rel. Marchand v. City of New Orleans, 37 La.Ann. 13 and Board of Com’rs of Atchafalaya Basin Levee District v. C. Lagarde Co., 167 La. 612, 120 So. 25. The test, as stated by the Supreme Court of the United States in Mobile v. Watson, 116 U.S. 289, 6 S.Ct. 398, 29 L. Ed. 620, is whether there has been an impairment in fact of the obligation, that is, if the law which limits the taxing power leaves no adequate means for the payment of the bonds, it is then violative of the Federal Constitution. It is manifest that this is a salutary rule of reason for, otherwise, the taxing power pledged to the payment of the antecedent debt would be compelled to be exerted to the utmost at all times, irrespective of the amount of the revenue produced and the amount necessary to service or liquidate the obligation.
I respectfully dissent.
HAWTHORNE, J., concurs in the dissent of McCALEB, J.