# W. T. ROBINSON, A CITIZEN AND TAXPAYER OF THE COUNTY OF MAUI, TERRITORY OF HAWAII, ON HIS OWN BEHALF, AND ON BEHALF OF ALL AND SINGULAR THE CITIZENS AND TAXPAYERS OF SAID COUNTY, *v.* L. M. BALDWIN, AS TREASURER OF THE COUNTY OF MAUI, TERRITORY OF HAWAII.

### SUBMISSION ON AGREED FACTS.

ARGUED MARCH 27, 1908.                    DECIDED APRIL 21, 1908.

### HARTWELL, C.J., WILDER AND BALLOU, JJ.

COUNTIES—*bonds—limitation with respect to taxable property.*

The limitation in Sec. 55 of the Organic Act of bonded indebtedness of a subdivision of the Territory to a certain percentage of the assessed value of taxable property of such subdivision refers to property taxable by such subdivision, and a county without the power of taxation has no power to issue bonds.

### OPINION OF THE COURT BY HARTWELL, C.J.

The parties seek an adjudication upon the validity of certain bonds of the County of Maui proposed to be issued under Act 139 S. L. 1907, entitled "An Act to Authorize an Issue of Bonds by the County of Maui, in the Sum of One Hundred Ten Thousand Dollars, under the Provisions of Act Sixty-Five of the Session Laws of Nineteen Hundred and Seven."

The agreed facts are mainly those which are set forth or referred to in Act 139, which was vetoed by the governor and passed over the veto, and in Act 65 S. L. 1907, entitled "An Act to Enable the Counties to Provide for County Loans." The governor's veto of Act 139 was based on the first objection made by the plaintiff, namely, that the provision in Sec. 4 that the act take effect upon the date of its approval by the president of the United States was an unlawful delegation of legislative power.

The other grounds on which the plaintiff contests the issuing of the bonds are in substance as follows: That Acts 65 and 139, authorizing county bonds and making their payment a charge upon county revenues, conflict with Act 52 S. L. 1903, Act 55 S. L. 1905 and Act 41 S. L. 1907, authorizing territorial bonds and making their payment a charge upon the consolidated revenues of the Territory, by impairing the obligation of the territorial bonds; that Act 65, authorizing the treasurer of each county to. issue bonds of the county, does not authorize the county to issue them; that the resolution of the board of supervisors, referred to in Act 139, authorizing the issue of bonds "redeemable in not more than five years and payable in not more than fifteen years from date of issue," does not comply with Sec.3 of Act 65 requiring that no bonds be issued until a resolution authorizing the issue thereof, setting forth amongst other things "the term of the proposed bond issue," shall have been passed by the supervisors of the county and confirmed by an act of the legislature approving and permitting such proposed issue.

Act 65 was approved and became law April 16, 1907, and it appears .from Act 139 that the resolution of the board of supervisors making the bonds payable in not more than fifteen years from date of issue was adopted April 17. The agreed statement shows that March 14, 1908, the board of supervisors passed a resolution definitely fixing the term of the bonds by making them payable in fifteen years from date of issue.

The plaintiff also claims that the first resolution of the board of supervisors was invalid by reason of the absence at its meeting of one of its members who had received sufficient notice of the meeting and was too ill to attend, but approved of the resolution and would have voted for it if he had been able to be present. Finally, the plaintiff contends that the bonds were not officially approved by the president by signing his name without official designation to the following statement:

"December 18, 1907. By virtue of the power in me vested by Section Fifty-five of the Act of Congress approved April thirtieth, A. D. Nineteen Hundred, (31 Statutes at Large, page 141), I hereby approve the incurrence of debt and issue of bonds in the sum of one hundred and ten thousand dollars by the County of Maui, Territory of Hawaii, pursuant to authority conferred on said Maui County by Acts of the Legislature of said Territory of April 16, 1907, (No. 65), and May 1, 1907, (No. 139)."

Another possible objection to the issue of the bonds is suggested by the provision in Sec. 3, Act 139, "Nothing in this Act contained shall be held in any manner to authorize or empower said county to levy or impose taxes," and the limitation placed by the Organic Act, Sec. 55, upon indebtedness which may be contracted "by or in behalf of the Territory or any political or municipal corporation or subdivision thereof." The limitation is thus expressed: "The total of such indebtedness incurred in any one year by the Territory or any subdivision shall not exceed one per centum upon the assessed value of taxable property of the Territory or subdivision thereof, as the case may be, as shown by the last general assessment for taxation, and the total indebtedness for the Territory shall not at any time be extended beyond seven per centum of such assessed value, and the total indebtedness of any subdivision shall not at any time be extended beyond three per centum of such assessed value." Act 65 limits the total indebtedness which may be incurred by any county to "three per centum of the assessed vaue of the taxable property in such county," and the amount of the indebtedness which may be incurred in any one year to one per centum "of such assessed value." If the Organic Act limits indebtedness of a county to a percentage of property taxable by it then, as counties have no authority to tax, its bonds could not be issued.

The case presents but four questions which require serious consideration, namely: (1) The effect upon the Act 139, which authorized the bonds, of the provision for its taking effect upon

the date of its approval by the president of the United States, the question being whether this is a delegation to the president of law making power; (2) the effect upon the bonds of the failure of the supervisors, prior to the enactment of Act 139, to fix the time for payment of the bonds; (3) whether making the county bonds a charge on the revenues of the county derived from the Territory affects the security of the territorial bonds the payment of which is a first charge upon the territorial revenues; (4) whether the Organic Act requires as a prerequisite to the issue of county bonds that there be property taxable by the county for securing their payment.

(1) By Sec. 49 Organic Act, Act 139 became a law when it was passed over the governor's veto. If its fourth section meant that the act would not go into operation until the president's approval, which merely fixed that time, then the approval was not a condition precedent to the act becoming law and the section is not an attempt to place legislative responsibility upon the president or to delegate to him any portion of legislative power. By Sec. 55 Organic Act territorial or county indebtedness could not be incurred until approved by the president and by Sec. 1 of Act 139 the issue of bonds was subject to his approval so that the section was not required in order to authorize their issue. The mere postponement of the taking effect of an act until a stated time or until an event which may or may not occur does not render the act incomplete legislation. To require adoption of a legislative measure by popular vote in order that it take effect is generally considered a proper exercise of legislative power concerning local matters as, for instance, in restricting liquor sales or authorizing municipal bonds for stated purposes which are instances of submission to the voters of the desirableness of accepting or declining a legislative enactment according as they shall deem it to be desirable or not. A majority of the court think that the fourth section is not intended to require the president's approval in order that the act

should become law and therefore is not an attempted delegation of law making power but is intended merely to fix the time when the law would go into operation, or else that it refers to the approval required by the Organic Act and expressed in Sec. 1 authorizing the issue of the bonds "subject also to the approval of the president of the United States," and that in any of these meanings the section does not invalidate the rest of the act which is complete in itself it being "elementary that the same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected." *Pollock v. Farmers' Loan & Trust Co.* 158 U. S. 635.

(2) The resolution of the board of supervisors does not strictly comply with the requirement of Sec. 3 Act 65 S. L. 1907 as to fixing the "term" of the bond issue, but Act 139, which recites the resolution and refers to it as "in accordance with the provisions of said Act 65," authorizes the treasurer to issue bonds "under and in accordance with the provisions of Act 65." This may be considered as showing that the legislature regarded the resolution as a sufficient compliance with Act 65 or as dispensing with a literal compliance in this respect, the act not being in the nature of a fundamental law but being subject to modification or amendment.

(3) The third ground is entirely untenable since the first charge upon the territorial revenues would be the territorial bonds. The county bonds, although charged upon county revenues derived from territorial revenues, would necessarily be a second charge.

(4) The most difficult question in the case is whether the limitation of indebtedness which a county as a subdivision of the Territory may incur in any one year (Organic Act Sec. 55), namely, one per centum upon the assessed value of taxable property of the county shown by the last general assessment

for taxation, implies that the property upon the assessed value of which the amount of indebtedness is determined shall be taxable by the county. Ordinarily a power to issue municipal bonds implies power to levy taxes for their payment. *Citizens' Sav. & Loan Ass'n. v. City of Topeka,* 87 U. S. (20 Wall.) 655; *U. S. City of New Orleans,* 98 U. S. 381; *Ralls County Court v. U. S.,* 105 U. S. 735; *City of Quincy v. Jackson,* 113 U. S. 335.

The act of July 30, 1886, ch. 818, 24 Stat. L. 170, limits general territorial indebtedness which may be incurred for the erection of penal, charitable or educational institutions to "one per centum upon the assessed value of the taxable property in such Territory as shown by the last *general assessment for taxation,*" while the limit of indebtedness of municipal corporations is "four per centum of the value of the taxable property within such (municipal) corporation, county or subdivision to be ascertained by the last assessment for territorial and county taxes." These provisions are quoted from Secs. 3 and 4 of the act, the former section declaring that "no law of any territorial legislature shall authorize any debt to be contracted by or on behalf of such Territory" except for the purposes and within the limits therein named, and the latter "that no political or municipal corporation, county or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose" except to the limit named.

The act of March 4, 1898, ch. 35, 30 Stat. L. 252, amends the act of 1886 by authorizing bonds by chartered municipal corporations with a population of not less than one thousand persons for sanitary and health purposes, sewers, water works and street improvements, requiring that no bonds be issued by any city or town unless upon a vote of two-thirds of its qualified voters, each of whom must be "owner of real or personal property subject to taxation within the municipality."

Robinson v. Baldwin, 19 Haw. 9.

The two sections of the act of 1886 providing for territorial and municipal indebtedness are condensed in the Organic Act into one paragraph. If the limit of indebtedness of the Territory and of the counties, respectively, were therein expressed to be a percentage upon the assessed value of the "taxable property of each as shown by *its* last general assessment for taxation" it would appear that county assessment, meaning taxes assessed by the county, would be required for county bonds.

The inference that in limiting county as well as territorial indebtedness to a percentage of the taxable property of the county or Territory, respectively, congress intended property taxable by the county or Territory, whichever should issue the bonds, is supported by the fact that such limitations are almost invariably referred to the value of taxable property as a standard, not merely as furnishing a convenient figure but "in relation to the sources of payment" (*Litchfield v. Ballou,* 114 U. S. 190), that is, to the power of taxation by the municipality itself.

If the provisions of the Organic Act of this Territory, limiting indebtedness which may be incurred by the Territory or any subdivision thereof to a percentage of the assessed value of the taxable property of the Territory or subdivision as shown by the last general assessment for taxation, have a different meaning from nearly identical expressions in other acts of congress on the subject, which appear to restrict county indebtedness to a percentage of the property taxable by the county, then the Organic Act was intended to establish a system of local self government radically different from that of the other Territories.

If other methods than taxation are provided for payment bondholders cannot complain that insufficient security is thereby furnished or that a levy of taxes for their payment cannot be compelled. They know before they take the bonds what

the security is.   When power to tax is unnecessary for the pur-
pose of providing counties with "means to discharge their
pecuniary obligations" (*U. S. v. New Orleans,* supra, 393),
it may be said that there is no implication that in the grant by
congress of legislative power to authorize county bonds or in
the limitation upon the extent of such bond issues power to
tax is "necessarily an ingredient of such a power to contract,
as ordinarily political bodies can only meet their obligations
through the instrumentality of taxation." *Ralls County Court
v. U. S.* supra, 736.   Thus in *U. S. v. Macon,* 99 U. S. 582,
a sinking fund consisting of one-twentieth of one per cent. on
the taxable property of the county was provided for the payment
of certain county bonds issued in payment of railroad stock.
The court held that the implication that the legislature
in authorizing the county to incur the extraordinary debt in-
tended to grant it full power to tax for the payment of the debt
"was repelled by the special provision for the tax of one-
twentieth of one per cent. and the case is thus brought directly
within the maxim expressio unius est exclusio alterius."

By Sec. 10 Act 65 S. L. 1907, entitled "An Act to Enable
the Counties to Provide for County Loans," upon default in
payment of bonds the holder may bring an action against the
defaulting county "and should any moneys be then or there-
after payable by the Territory of Hawaii to the County defend-
ant in such action" a garnishee process may issue against the
auditor of the Territory and, by Sec. 12, from the time of
service "it shall be unlawful for such garnishee to draw, sign
or issue any warrant payable to the order of the County de-
fendant or any of its officers or permit or cause the same to
be done, for any moneys which may be then or thereafter pay-
able to such defendant until the action shall have been finally
determined and judgment therein rendered, if any, shall have
been fully paid," and "all moneys due or to become due to
such defendant shall be held in the Treasury of the Territory

from the time of such service until such final judgment" to an amount sufficient to meet the demand. By Sec. 1 of Act 93 "Fifty per centum of the total amount of poll and school taxes and taxes on property and incomes collected in each County shall be paid by the Treasurer of the Territory to such County" upon monthly warrants by the auditor of the Territory in favor of the county treasurer, and, by Sec. 2, "The funds realized from such warrants shall be applied by each County Treasurer to the payment of the expenses of his respective County." By Act 121 S. L. 1907 the treasurer of each county is authorized to establish as a special deposit in the treasury of his county a sinking fund to pay any present or future bonded indebtedness of the county and is required to transfer from its current receipts and deposit to the credit of the sinking fund such an amount of money as will, compounded annually at the rate of interest specified in the bonds, amount in the unexpired term thereof to the full face value of such bond issue.

Future legislative enactments which would substantially lessen this security for payment of county bonds would be liable to be treated as invalid under the constitutional prohibition of state legislation impairing the obligation of contracts which may be applicable under the provision in the Organic Act, Sec. 5, that the constitution "shall have the same force and effect within the said Territory as elsewhere in the United States."

But while the foregoing provisions seem to make it unnecessary for counties to have power to tax themselves in order to obtain money for paying their bonded indebtedness, yet if the Organic Act intends that county bonds shall be payable out of self imposed county taxes and not out of territorial taxes voted by the legislature, then, in the absence of power in the county to levy taxes for their payment, the issue of its bonds must be treated as unauthorized by the Organic Act. If it be said that this is a strict construction of the limitation imposed by

law this is the rule generally adopted in construing restrictions upon municipal powers to incur debt. 1 Abbott, Mun. Corp. Sec. 151.

"These restrictions have been found necessary because of the mania possessed apparently by all public corporations to incur debts without regard to the means or source of payment. To restrict and limit the capacity for municipal extravagance the courts have upheld their constitutionality whenever called in question and applied to them the strict rules of construction." Ib. Sec. 149.

Whatever may have been the object which congress had in view in prescribing the method of limiting the issue of county bonds by reference to property taxable by the county it is enough to say that such limitation clearly appears to have been made.

On the fourth ground above mentioned the plaintiff is entitled to an injunction restraining the defendant from issuing the bonds.

*A. Lewis, Jr.* (*Smith & Lewis* on the brief), for plaintiff.

*J. L. Coke* (*D. H. Case* with him on the brief) for defendant.