## B. VON DAMM, ET AL., v. D. L. CONKLING, TREASURER OF THE CITY AND COUNTY OF HONOLULU.

## No. 960.

### SUBMISSION WITHOUT ACTION.

ARGUED AUGUST 14 AND 15, 1916.              DECIDED AUGUST 24, 1916.

### ROBERTSON, C.J., WATSON AND QUARLES, JJ.

CONSTITUTIONAL LAW—*municipal corporations—taxation by special assessment.*

A statute providing that the cost of a highway improvement shall be assessed against the lands benefited by the improvement cannot be said to provide for or constitute a taking of private property for public use without just compensation or without due process of law because it does not expressly provide that the amount of an assessment shall not substantially exceed the special benefit conferred. Much latitude must be left to the legislature in determining the method of assessment, and a statute can be successfully called in question only when it is so devoid of any reasonable basis as to constitute an arbitrary abuse of power.

MUNICIPAL CORPORATIONS—*indebtedness—bonds payable only out of special fund.*

The issuance of bonds payable only out of a specific fund raised by a special tax for a public improvement does not constitute municipal indebtedness within the meaning of fundamental limitations upon such indebtedness. That a contingent future liability on the part of the municipality may exist in connection with such issuance does not alter the rule.

SAME—*proceedings under improvement statutes—special assessments.*

Where a statute authorizes highway improvements to be made at the cost of property specially benefited upon assessments levied according to area or frontage, one improvement district may include a combination of improvements, and the assessment as to some be made according to area and as to others according to frontage.

SAME—*public contracts—time limit for execution of contract.*

The provision of R. L. 1915, Sec. 1798, that no bid for a contract

for a highway improvement shall be considered unless accompanied by a certified check payable to the city and county, which check shall be forfeited unless the bidder shall sign the contract and furnish an approved bond within ten days after the contract is awarded, held to be a provision for the benefit of the municipality which does not prohibit the signing of the contract and furnishing the bond after the expiration of ten days, or prevent the board of supervisors from reasonably extending the time for so doing.

OPINION OF THE JUSTICES BY ROBERTSON, C.J.

The plaintiff in this case is a citizen, resident and taxpayer of this Territory and the owner of land situated in Manoa Improvement District No. 1, a residential section of the city and county of Honolulu. He purports to enter into this submission on behalf of all other citizens and taxpayers of said district, as well as on his own behalf, but no others have appeared. The defendant, as treasurer of the city and county of Honolulu, in furtherance of certain ordinances passed by the board of supervisors of the city and county and pursuant to a certain resolution of said board, proposes to prepare, issue, sell and deliver certain improvement bonds of the city and county, and this the plaintiff seeks to have enjoined. The plaintiff claims that the statute under which the municipal officials have proceeded is in conflict with the Fifth Amendment of the Constitution and section 55 of the Organic Act of this Territory; that the proceedings were not in conformity with the statute; and that the bonds, if issued, will be invalid. The improvement statute, comprising sections 1793 to 1813, of the Revised Laws, as amended in certain respects by Act 164 of the Session Laws of 1915, provides in substance, as follows: That whenever in the opinion of the board of supervisors of the city and county of Honolulu it is desirable to open, extend or widen, or to grade, pave, curb or otherwise improve any highway, such betterments or im-

provements shall be made and done according to the pro-
visions of the statute, and the cost thereof shall be assessed
against the land benefited, either on a frontage basis or
according to area, and, if the latter, the board of super-
visors shall establish an improvement district, and the
municipality may pay out of general revenue all or any
part of the cost of acquiring any new land required, or of
the improvement of a main or general thoroughfare (Sec.
1793); the board shall, by resolution, propose the making of
any such improvement, specifying the character and extent
thereof and the proportion, if any, of the cost proposed to
be borne by the municipality, the materials proposed to be
used, and whether the cost is to be provided by assessment
per front foot against the land abutting upon such highway
or per square foot according to area of land within an im-
provement district, the general boundaries of such district
and sub-districts, if any, against which different proportions
of the cost are intended to be charged, and directing the
preparation of all necessary maps, plans, specifications,
estimates and other details so as to show the total cost and
the approximate share thereof that would be assessable
against each parcel of land, and the part, if any, proposed
to be borne by the municipality; and thereupon the board
shall give notice by publication of all thereof to the owners,
lessees and occupants of the lands proposed to be assessed
or taken, and fixing a date and place when a public hearing
will be had respecting the proposed improvements and a
full opportunity given to all persons interested to present
suggestions or objections to the proposed improvements or
any part or detail thereof (Sec. 1794); if the owners of
fifty-five per cent. of the total frontage or area to be assessed
shall file a written protest against the making of the im-
provements or any part of the plan therefor the same shall
not be made contrary to such protest (Sec. 1795); if suffi-
cient protests have not been filed, and the board decides to

proceed with the plan without material change, it shall, by resolution, create, define and establish the extent of the frontage or the improvement district to be assessed, define the kind, extent and details of the proposed improvements, declare the proportion of the cost which is to be borne by the municipality and the method of assessment determined on, and direct the preparation of a corrected map showing the exact location of the improvement and all details with final plans and specifications for the work, which shall be used as the basis for the calling for bids and awarding of contracts for doing the work (Sec. 1796); the owners of sixty per cent. of the frontage upon any highway or of the area of a proposed improvement district may by petition initiate such proceedings (Sec. 1797); all such improvements shall be constructed under contract let to the lowest responsible bidder after public advertisement for tenders; no bid shall be considered unless accompanied by a certified check, or its equivalent, for not less than ten per cent. of the amount bid, which shall be forfeited to the municipality unless the successful bidder shall sign the contract and furnish an approved bond for its faithful performance within ten days after the contract is awarded; and any other method of letting contracts shall be illegal and void (Sec. 1798); before the letting of any contract the board shall cause a corrected map to be prepared showing in detail the proportionate amount per front foot or per square foot, as the case may be, to be assessed against the property in the district, or subdistricts, if any, and a list of all known owners, lessees and occupants of the lands, and give notice by publication of the total amount of the cost of the improvement based upon the bid of the lowest responsible bidder, the maximum share per front foot or per square foot proposed to be charged to the district or sub-districts, and that the map may be seen and examined at the office of the city and county engineer, and fixing a date and place when a public

hearing will be had and the supervisors will sit as a board of equalization to receive complaints or objections respecting the method of apportionment, or respecting the proposed several assessments (Sec. 1799); after such hearing the supervisors shall proceed to make such changes as they may deem just and equitable in, or shall confirm, the first proposed assessment, and, upon reaching a final decision, shall fix by ordinance the portions of such cost to be assessed against the lands in the district and the owners thereof respectively (Sec. 1800). Then follow provisions for the giving of notice to the land owners of the assessments and when the same shall be payable; as to liens upon the lands for unpaid assessments; and the sale at auction of land for default in payment. Section 1808 provides that at any such sale the treasurer of the city and county shall bid for any property so to be sold the amount due on account of the unpaid assessment, and if the bid is the highest offer shall pay for the same in cash out of the general funds of the city and county, and receive a conveyance of such property in the name of the city and county. And there are provisions authorizing the issuance of interest bearing improvement bonds by the city and county to defray the cost of any such improvement, such bonds not being a charge against or payable out of the general funds of the municipality, but only the special fund composed of the moneys collected on account of assessments made for the improvement for which they are issued, and the municipality shall not otherwise guarantee payment of any such bonds. Section 1812 provides that no action or proceeding at law or in equity to review any act done or to enjoin the performance of any act proposed to be taken under the statute shall be maintained unless begun within thirty days after performance of the act or the passage of the resolution or ordinance complained of.

The agreed facts show that on May 17, 1915, the board

of supervisors commenced proceedings by adopting a resolution relating to proposed street improvements in Manoa Valley, Honolulu, and the creation of an improvement district therein to be known as Manoa Improvement District No. 1; that thereafter all necessary steps were taken, notices given, hearings had, resolutions and ordinances passed, assessments levied, and contract awarded in the manner required by the statute; the district defined comprised an area of 266.88 acres, divided into two sub-districts, and the plan included the grading, paving, curbing and draining of the streets of the district, the widening of certain of them, and the declaration of two of them to be main or general thoroughfares, twenty-five per cent. of the cost of paving which the municipality agreed to pay. The plaintiff made no objection at either of the hearings against the making of the proposed improvements, or the assessments to be levied, or the apportionment thereof. But on June 10, 1916, he paid the first installment of his assessment under protest claiming that the statute, ordinance and assessment are invalid under the Organic Act of the Territory; that the ordinance and assessment do not comply with the statute; and that the assessment does not comply with the ordinance. On June 27, 1916, the board awarded the contract to one Ritchie, the lowest responsible bidder, who agreed to do the work for the sum of $187,633.31, and required of him that he execute the contract and an approved bond within ten days, but on July 7, upon the request of Ritchie's agent and of a representative of the surety company with whom negotiations were in progress for a contractor's bond, the board extended the time for executing the contract and bond until July 26, upon which date the instruments were executed. All the property owners within the improvement district have paid at least the first installment of the assessment, and there remains to be collected future installments aggregating the sum of $146,431.33 bearing interest at the

rate of six per cent. per annum, and it is proposed to issue bonds in the sum of $146,000. bearing interest at the rate of five and one-half per cent. to cover the amount which will become due upon the contract pending the payment of the balance of the assessment.

On behalf of the plaintiff it is contended that the statute violates the Fifth Amendment of the Constitution by authorizing the taking of private property for public use without just compensation and without due process of law in that it fails to provide that the assessments on the different parcels of land affected must be in proportion to, and shall not exceed, the special benefits received from the improvements for making which the assessments are levied. True, as argued, the theory upon which taxation by special assessment for public improvements is sustained is that special benefits are conferred upon certain property and that that property shall contribute to the expense of the improvement in substantial proportion to the amount of benefit accruing to it from the improvement. 2 Page and Jones, Taxation by Assessment, Secs. 651, 665; 5 McQuillan, Mun. Corp. Sec. 2018. Special assessment statutes have given rise to a great mass of litigation and divergent views thereon have been expressed by different courts. It would be useless to attempt to review or reconcile the cases. Counsel for the plaintiff contend that their point must be sustained if it appears, as they claim it does appear, that the statute makes no provision that assessments shall *not* be in substantial excess of special benefits. Among the cases cited are *Norwood* v. *Baker,* 172 U. S. 269, and *White* v. *Gove,* 183 Mass. 333. In *Norwood* v. *Baker,* it appears that a strip of land was condemned and taken under the right of eminent domain for the purpose of opening a street through to connect with an existing street on each side of the strip in question. Pursuant to a State statute the whole cost of the operation, including the value of the strip and the ex-

pense of the condemnation proceeding, was charged against the remainder of the land which abutted the strip taken on each side. The court held that to be contrary to the underlying principle of taxation for public improvements by special assessment, and constituted a taking of private property for public use without compensation and, therefore, without due process of law, in violation of the Fourteenth Amendment. That case as it has been limited and explained in a number of cases reported in volume 181 of the reports of the United States supreme court is not an authority for the point to which it is cited here. See *Wagner* v. *Baltimore*, 239 U. S. 207, 219. In *White* v. *Gove*, quoting *Dexter* v. *Boston*, 176 Mass. 247, it was said, "In determining whether a statute is unconstitutional, the question is not whether the result is harmful in the particular case, but whether the statute, according to its terms, will violate the provisions of the Constitution in its application to cases which may be expected to arise." But the court also said, "The question of difficulty in dealing with cases of this kind is, How far may the court interfere with the legislative determination of a method for making special assessments? Of course, if a statute shows on its face that it entirely disregards the relation of the benefits to the taxes to be assessed upon the respective estates, it is plainly unconstitutional. In many cases, however, it is impossible to estimate the amount of benefit with absolute accuracy, and methods of determination must be adopted which are practicable, and which at the same time will give a reasonable approximation to accuracy. The selection of methods is primarily a matter for the legislature, and much latitude must be allowed it in the exercise of its judgment and discretion in regard to a subject of this kind. It is only when its decision is plainly one that will be likely to result in taxation that is either disproportional or unreasonable that the court can interfere. So in different cases a great variety of methods

have been sustained by the court as within the legislative authority." 183 Mass. 335, 336. In *Sayles* v. *Pub. Works of Pittsfield,* 222 Mass. 93, where the validity of a sidewalk law which provided for the assessment of one-half the cost upon all lands especially benefited whether the same abutted upon the sidewalk or not, an assessment being levied according to frontage, was sustained, the court said, "The petitioners can prevail only on the ground that the statute on its face appears to be in conflict with the fundamental law." In *Embree* v. *Kansas City etc. Road District,* 240 U. S. 242, 250, the court said, "A legislative act of this nature can be successfully called in question only when it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power." And in 4 Dillon, Mun. Corp. (5th ed.) Sec. 1443 (4) it is said that "the decided tendency of the later decisions * * * is to hold that the legislative power is not unlimited, and that these assessments must be apportioned by some rule capable of producing reasonable equality, and that provisions of such a nature as to make it legally impossible that the burden can be apportioned with proximate equality are arbitrary exactions and not a legitimate exercise of legislative authority or of the taxing power." In *Norwood* v. *Baker* the statute was held to be invalid because it constituted an arbitrary exaction in that it compelled the land owner to pay for his land which was taken for public use and also the expense attendant upon its condemnation. See also *Myles Salt Co.* v. *Iberia Drainage Dist.,* 239 U. S. 478. The statute of this Territory certainly is not open to that objection. It is fair on its face, and by no means necessitates the making of unfair or unequal assessments. On the contrary it discloses an intent on the part of the legislature to provide a plan whereby public road improvements may be made at the cost of lands to be specially benefited by the improvement; and *prima facie* at least, the cost of grading, paving, drain-

ing and curbing a highway, other than a main artery of
traffic perhaps, will not exceed the special benefits conferred
upon the lands abutting on or adjacent to the street or
streets to be improved. We believe that the statute, taken
as a whole, is well within the requirements laid down by
the authorities as being applicable in this class of cases and
to this kind of statute. Gray, Limitations of Taxing Power,
Secs. 1964, 1966, 1969. In a general statute such as this the
requirement that assessments shall not exceed the benefits
will, if necessary, be read into it. *Cheney* v. *Beverly,* 188
Mass. 81, 85; *Sayles* v. *Pub. Works of Pittsfield, supra.*
And it is well settled that "The legislature, in the exercise
of the right of taxation, has the authority to direct the
whole or such part as it may prescribe, of the expense of a
public improvement, such as the establishing, the widening,
the grading or the repair of a street, to be assessed upon the
owners of lands benefited thereby." *Bauman* v. *Ross,* 167
U. S. 548, 589. To the same effect are *French* v. *Barber
Asphalt Paving Co.,* 181 U. S. 324, 342; *Webster* v. *Fargo,*
181 U. S. 394; *Seattle* v. *Kelleher,* 195 U. S. 351, 358; *Houck*
v. *Little River Dist.,* 239 U. S. 254, 265. An unobjection-
able statute may be enforced in an arbitrary and illegal
manner, and so put a particular assessment made under it
under the ban of a constitutional provision. *Martin* v.
*District of Columbia,* 205 U. S. 135; *Driscoll* v. *North-
bridge,* 210 Mass. 151. But it is not claimed by the plaintiff
in this case that the assessment was not in fact fairly ap-
portioned among the lands within the district, nor that the
assessment upon his land exceeded the special benefit accru-
ing to it by reason of the improvement. We are of the
opinion that the statute does not contravene either pro-
vision of the Fifth Amendment.

It is contended that the statute is in conflict with section
55 of the Organic Act of this Territory in that it provides
for the incurring of indebtedness and issuance of bonds for

public improvements by a municipal subdivision of the
Territory without the approval of the President of the
United States contrary to the inhibitions in that regard
therein contained. The argument is that the bonds author-
ized to be issued by the statute are bonds of the city and
county of Honolulu; that on being issued they would con-
stitute indebtedness of the municipality; and that such
bonds may not be issued, nor such indebtedness incurred,
in view of section 55 of the Organic Act, without the
approval of the President, and it is not intended to obtain
such approval as to the indebtedness and bonds in question,
nor does the statute require it. Bonds issued under the stat-
ute would be nominally the bonds of the municipality, but
it does not follow that they must, in order to be valid, be
approved by the President. The approval required by the
Organic Act is to indebtedness incurred or loans made by
the municipality, and to the issuance of "any bond or other
instrument of any *such* indebtedness." If, therefore, the
indebtedness proposed would not be that of the munici-
pality the bonds to be issued as evidence of that indebted-
ness would not require the approval of the President
though, in form, they would be the bonds of the munici-
pality. The courts have repeatedly held that the issuance
of bonds or certificates payable only out of a specific fund
raised by a special tax for public improvements does not
constitute municipal indebtedness within the meaning of
constitutional limitations upon such indebtedness. The
reason for this is that the municipality merely acts as the
trustee of the fund and the agent for its collection under
the statute and disbursement under the contract. *Mankato
v. Barber Asphalt Paving Co.,* 142 Fed. 329, 346; *Quill* v.
*Indianapolis,* 124 Ind. 292; *Catlettsburg* v. *Self,* 115 Ky.
669; *Kelly* v. *Minneapolis,* 63 Minn. 125; *Kansas City* v.
*Ward.* 134 Mo. 172, 185; *Little* v. *Portland,* 26 Ore. 235,
245; *Baker* v. *Seattle,* 2 Wash. 576. But, it is argued, our

statute goes further, and requires that, in the event of the non-payment of assessments and the sale of lands because of· the non-payment, the municipality shall bid the amount due upon the assessments and may thereby incur liability as purchaser necessitating expenditures from the fund of its general revenues. Such liability is no different in principle from that which might arise under a statute not containing the provision referred to in the event of a deficiency caused by the failure of the municipal corporation to collect the assessments in full. And it is held that the possibility of such liability does not alter the rule. See *Beaumont* v. *Masterson,* 142 S. W. (Tex.) 984, 987; *Baker* v. *Seattle, supra,* 582. Such a contingent future liability does not constitute indebtedness within the meaning of the constitutional provision. *Bismark Water Supply Co.* v. *Bismark,* 23 N. D. 352, 362; *Quill* v. *Indianapolis, supra; Little* v. *Portland, supra.* See also *People* v. *Arguello,* 37 Cal. 524. In *Jacksonville R. Co.* v. *Jacksonville,* 114 Ill. 562, it was held that the making of a public improvement to be paid for out of a special fund to be raised principally by special assessment but partly by general taxation did not give rise to an indebtedness, and that no question as to the incurring of an indebtedness would be presented unless in the event of the city's failure to raise its share of the fund by a general tax it should attempt to borrow the amount. And in *Corey* v. *Ft. Dodge,* 133 Ia. 666, it was held that the letting of a contract for a public improvement, the cost of which was to be paid by special assessment against abutting property, did not constitute an indebtedness though it was provided that any deficiency would be supplied from another fund raised by a general tax. In the case at bar it is clear that the municipality is not attempting to borrow money, and it will not be driven to the necessity of making a loan unless in the event of the non-payment of assessments and the purchase of land within the improvement district it shall

be without funds to pay therefor. What, if that situation should arise, would be the liability of the municipality, and what rights, if any, a taxpayer could assert need not be inquired into at this time. We are of the opinion that in proceeding with the proposed improvements under the statute the city and county of Honolulu will not be incurring any indebtedness or making a loan or a bond issue within the purview of the Organic Act. What has been said we think disposes of the contention that the improvement plan runs counter to the further clause in section 55 of the Organic Act which provides that no "debt" shall be authorized or contracted by any municipal corporation except to pay interest upon existing indebtedness, to suppress insurrection, or to provide for the common defense. Neither the statute, nor the contract made under it, nor the proposed bond issue authorizes or contracts a debt of the municipality within the meaning of the act. Reference was made in the plaintiff's brief to the case of *Robinson* v. *Baldwin*, 19 Haw. 9, decided in 1908, in which it was held that as the municipal sub-divisions of this Territory have not been given the power of taxation they have no authority to issue bonds. The ruling made in that case has been rendered obsolete through the amendment by Congress on May 27, 1910, of section 55 of the Organic Act.

It is contended that the proceedings did not comply with the statute in that they included a combined assessment according to area and frontage whereas the statute (Sec. 1793) provides for the use of those two methods in the alternative. We think there is no merit in this point. The agreed facts show that the plan intended to be carried through by the board of supervisors included a combination of improvements. The board was authorized to divide the district into sub-districts and to treat them differently according to their condition and situation, and the assessment for grading and paving according to area, while that for

curbing was according to frontage, was authorized by the act, and, apparently, equitable. Moreover, the plaintiff made no objection to the method pursued at the hearing accorded for the consideration of objections, and the time has passed for making such. See *Hildred* v. *Longmont*, 47 Colo. 79, 97.

The plaintiff contends that in order that bonds issued under the statute may be valid every step required by the statute must have been taken strictly as directed, whereas the agreed facts in this case show that the contract and bond were not executed by the contractor within ten days from the date of the awarding of the contract, as required by section 1798. In *Perine* v. *Forbush*, 97 Cal. 305, the statute provided that "if said original bidder neglects, fails or refuses for fifteen days after the first posting of notice of the award to enter into the contract, then the city council shall again advertise for proposals, as in the first instance, and award the contract for said work to the then lowest regular responsible bidder." The court said, "It is true that statutes which fix the time within which official acts are to be performed are often held to be merely directory as to the time so fixed, but such a statute is never so construed when its language indicates the contrary intention; as, for instance, when the statute attaches a consequence to the failure to perform the act within the time limited," and held that the provision was mandatory. But the provision here is quite different: it is that "No bid shall be considered unless accompanied by a certified check, or equivalent, payable in and in favor of the city and county, for not less than ten per cent. of the amount bid; which check, or equivalent, shall be forfeited to the city and county unless the successful bidder shall sign the contract and furnish an approved bond within ten days after the contract is awarded." The language of the California statute was equivalent to an express declaration that a contract should not be executed after the expiration of fifteen days from the date of the award. Our statute neither

·expressly nor impliedly goes to that extent. The provision is not that the contract shall not be signed after the lapse of ten days, or that a readvertisement be made, but merely that the check or equivalent be forfeited. The abandonment of the contract by the successful bidder would merely have required another advertisement for tenders, resulting, perhaps, in an increase in the amount of the assessment. The taxpayers were not injured by the signing of the contract after ten days had passed. We think that the provision is one for the benefit of the city and county, and that the board of supervisors acted within its rights in extending, in good faith, the time for the execution of the contract and bond. As all the requirements of the statute and ordinance essential to the validity of the proposed bonds had been complied with, we think a recital to that effect on the face of the bonds would be in no way improper.

A judgment denying the injunction prayed for may be entered.

R. B. Anderson (Frear, Prosser, Anderson & Marx on the brief) for plaintiff.

A. M. Cristy, First Deputy City and County Attorney (A. M. Brown, City and County Attorney, W. T. Carden, Second Deputy City and County Attorney, and Smith, Warren & Sutton with him on the brief), for respondent.